OPINION
{¶ 1} Appellant, Daniel Boyle, appeals his convictions for theft in violation of R.C. 2913.02(A)(1), a first degree misdemeanor, resisting arrest in violation of R.C. 2921.33(A), a second degree misdemeanor, and aggravated menacing in violation of R.C. 2903.21, a first degree misdemeanor, following a jury trial in the Ravenna Division of the Portage County Municipal Court. Boyle was sentenced to four hundred days in jail (two hundred suspended), fined two thousand dollars (one thousand suspended), placed on three years supervised probation, and ordered to pay up to five hundred dollars in restitution. For the following reasons, we reverse Boyles' convictions and remand this cause to the trial court for retrial.
 {¶ 2} Boyle operates Boyle's Automotive Inc. on Brady Lake Road in Franklin Township, Ohio. Part of the property at Brady Lake Road is used for automotive repair, part of the property serves as a dump, and part of the property was leased to two tenants, David Moore ("Moore") and Robert Bacorn ("Bacorn"). Bacorn operates a tree service and rented space on Boyle's property to store equipment.
 {¶ 3} In May 2001, Bacorn unloaded a quantity of wood he had cut on Boyle's property. According to Bacorn, it was four or five cords of dry, seasoned wood. Moore, however, testified that there was less than a cord of wood and that the wood was worthless. James Adolph, who lives next to Boyle's property, also testified that the amount of wood was less than Bacorn claimed. In June or July of 2001, at Boyle's request, Moore had the wood moved to the back part of Boyle's property used for dumping. Bacorn testified that Boyle did not obtain his consent before having the wood moved. When Bacorn asked Boyle about his wood, Boyle told him that Moore needed the space to unload some mulch for use in Moore's landscaping business. Bacorn did not object to the wood being moved and never bothered to check the new location of the wood at the back of Boyle's property.
 {¶ 4} On December 24, 2001, Bacorn went with his nephew to Boyle's property to collect his wood. Bacorn claims he searched all over Boyle's property but could not locate the wood. Bacorn obtained Boyle's home address from Adolph. Bacorn went to Boyle's home in the early afternoon and inquired about the location of his wood. According to Bacorn, Boyle said that he "got rid" of the wood because it was rotten. When Bacorn replied that the wood was not bad, Boyle began to swear at him and insult him. Boyle told Bacorn to get all of his equipment off Boyle's property. According to Bacorn, Boyle concluded the tirade by saying that he should just get a ball bat and kill Bacorn. Boyle admits to threatening Bacorn, but claims that his threat was in response to Bacorn's threat to get something out of his truck. Bacorn left Boyle's home and contacted the Portage County Sheriff's Department. Deputy Harold J. Copen ("Copen") met with Bacorn at Boyle's property on Brady Lake Road.
 {¶ 5} Based on Bacorn's account of the incident at Boyle's home, Deputy Copen believed there was enough evidence to charge Boyle with theft and aggravated menacing. Deputy Copen intended to file the charges against Boyle and have a summons issued. Deputy Copen decided first to go to Boyle's home to verify Boyle's name, date of birth, and social security number. At the home, Deputy Copen explained to Boyle the purpose of his visit. After obtaining Boyle's social security number, Deputy Copen testified that Boyle went out of control and began swearing at and insulting him. Deputy Copen testified that he told Boyle that he did not want to arrest him on Christmas Eve, but Boyle replied that Copen should go ahead and arrest him. Deputy Copen testified that Boyle charged at him, got into his face, and continued swearing at him. At this point, Deputy Copen decided to arrest Boyle for Boyle's aggravated menacing of Bacorn.
 {¶ 6} Deputy Copen's and Boyle's accounts of the events after Copen made the decision to arrest Boyle differ markedly. At this point, Boyle went back toward his house, ignoring Deputy Copen's command that he was under arrest. According to Deputy Copen, Boyle went back toward the house to get a jacket; Boyle claims he wanted to call 911. Deputy Copen testified that he tried to restrain Boyle and that they struggled until they were in the house. Boyle testified that there was no struggle, although Deputy Copen struck him in the back as he was walking. Deputy Copen claims that Boyle threatened him and swung at him while they were struggling; Boyle denies this. Deputy Copen had radioed for backup while the confrontation was escalating outside. Boyle's girlfriend, watching the confrontation from inside the house, did, in fact, call 911.
 {¶ 7} Once inside Boyle's house, the confrontation continued. Deputy Copen testified that Boyle was still out of control and that Boyle got within inches of his face and threatened to smash his face. Boyle admitted to threatening Deputy Copen inside the house, but only after it appeared that Deputy Copen was about to draw his weapon. As other police officers began to arrive, Boyle voluntarily went with Deputy Copen outside and was arrested.
 {¶ 8} Boyle raises the following assignments of error for review:
 {¶ 9} "[1.] The court committed error prejudice [sic] to appellant when it failed to sustain his motion for judgment of acquittal of the offense of theft.
 {¶ 10} "[2.] The court committed error prejudice [sic] to appellant when it failed to sustain his motion for judgment of acquittal of the offense of resisting arrest.
 {¶ 11} "[3.] The court prejudiced appellant by permitting the introduction of evidence regarding prior misdemeanor convictions.
 {¶ 12} "[4.] It was error prejudiced [sic] to the appellant for the court to fail to include instructions to the jury on an essential element of the offense of resisting arrest.
 {¶ 13} "[5.] The court's imposition of a two thousand dollar fine was contrary to law.
 {¶ 14} "[6.] The trial court's imposition of consecutive sentences was contrary to law.
 {¶ 15} "[7.] The trial court's restitution order is contrary to law."
 {¶ 16} Boyle argues under his first two assignments of error that the trial court should have granted his Crim.R. 29 motion for judgment of acquittal on the offenses of theft and resisting arrest since the evidence presented at trial was insufficient to support his conviction for these offenses.
 {¶ 17} Pursuant to Crim.R. 29, a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). The defendant may move the court for acquittal "after the evidence on either side is closed." Id. When a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant "waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense." State v. Brown (1993), 90 Ohio App.3d 674, 685
(citation omitted); United States. v. Calderon (1954),348 U.S. 160, 164 fn. 1 ("[b]y introducing evidence, the defendant waives his objections to the denial of his motion to acquit"). In order to preserve a sufficiency of the evidence challenge on appeal, the defendant must renew his Crim.R. 29 motion at the close of his own case. Brown, 90 Ohio App.3d at 685, citing Helmick v.Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71, at paragraph one of the syllabus.
 {¶ 18} Having reviewed the record, we find that Boyle has failed to preserve his sufficiency of the evidence argument for appeal. At the close of the prosecutor's case, Boyle moved for acquittal. After the trial court denied the motion, Boyle proceeded to introduce evidence in his defense. At the close of all the evidence, Boyle did not renew his motion for acquittal. Accordingly, Boyle has waived any error with regard to the sufficiency of the evidence. State v. Hurd, 11th Dist. No. 2001-T-0086, 2002-Ohio-7163, at ¶ 13; State v. Rhodes, 11th Dist. No. 2000-L-089, 2001-Ohio-8693, 2001 Ohio App. LEXIS 5650, at *26; State v. Lindsey (Sept. 23, 1994), 11th Dist. No. 93-P-0050, 1994 Ohio App. LEXIS 4266, at *3-*4.
 {¶ 19} In light of our procedural disposition of the first and second assignments of error and our ruling sustaining the third assignment of error, we express no opinion on the merits of Boyle's contention that there was insufficient evidence to sustain his convictions for theft and resisting arrest. If, on remand, this matter again proceeds to trial, the trial court should consider the substance of Boyle's arguments raised herein, in particular, as it relates to the charge of theft.
 {¶ 20} Boyles' first two assignments of error are overruled solely for the procedural reason stated above.
 {¶ 21} Under his third assignment of error, Boyle argues that the trial court erred by permitting the prosecution to introduce evidence of Boyle's prior misdemeanor convictions.
 {¶ 22} During cross-examination, the prosecutor asked Boyle if he had "threatened people with serious physical harm before." Boyle replied, "no." The prosecutor repeated his question several times and Boyle answered, "but no, I'm not in the habit of doing that." Then, over the objection of Boyle's counsel, the prosecutor attempted to ask Boyle about a prior conviction for menacing. The court overruled the objection, stating: "The point is [the prosecutor] can ask something to test his credibility. Were you ever — did that ever happen? Yes or no. If it's no, then he's shut down. Then he can go ahead and impeach him with that testimony. If there's something there. * * * It's not character evidence at all. It's credibility." Although the objection was overruled, the prosecutor did not question Boyle further about his prior conviction on cross-examination.
 {¶ 23} After the defense had rested, the prosecutor called Deputy James Demastus of the Portage County Sheriff's Department as a rebuttal witness. The prosecutor elicited from Deputy Demastus, again over the objection of Boyle's counsel, testimony about an incident in November 1994, in which Boyle allegedly tried to run down another person with his automobile. Deputy Demastus also testified that Boyle was convicted on the reduced charge of menacing for this incident. Boyle provided further details regarding the November 1994 incident during surrebuttal examination.
 {¶ 24} Evidentiary rulings are within the discretion of the trial court and such rulings will not be overturned absent an abuse of discretion. State v. Long (1978), 53 Ohio St.2d 91,98. An abuse of discretion consists of more than an error of law or judgment, rather "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169 (citation omitted).
 {¶ 25} Rule 608(B) of the Ohio Rules of Evidence governs the circumstances in which a witness' credibility may be impeached by specific instances of prior misconduct. When dealing generally with specific instances of prior conduct, the rule states that such instances "may not be proved by extrinsic evidence." Evid.R. 608(B). Accordingly, the examiner is limited to questioning a witness about prior conduct to impeach the witness' credibility.State v. Kamel (1984), 12 Ohio St.3d 306, paragraph two of the syllabus (specific instances of prior conduct "may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid.R. 608(B)"). The examiner is bound or "stuck" with the responses given and may not, as the prosecutor did here, present rebuttal witnesses to discredit the earlier testimony. State v. Leuin (1984), 11 Ohio St.3d 172,174; State v. Gardner (1979), 59 Ohio St.2d 14, 19.
 {¶ 26} When an examiner seeks to impeach a witness' credibility with evidence of prior criminal convictions, he must comply with Evid.R. 609. Kamel, 12 Ohio St.3d 306, paragraph two of the syllabus ("[o]ther than the Evid.R. 609 exception for certain criminal convictions, a witness' credibility may not be impeached by extrinsic proof of specific instances of his conduct"). Pursuant to the rule, "evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year," or "if the crime involved dishonesty or false statement, regardless of the punishment." Evid.R. 609(A)(2) and (3). In the present case, Boyle's prior misdemeanor conviction for menacing satisfies neither of the requirements for being admissible under Evid.R. 609. Accordingly, the trial court erred by allowing evidence of Boyle's conviction to be introduced for the purpose of attacking Boyle's credibility. State v. Wright (June 7, 1994), 10th Dist. No. 93AP-1042, 1994 Ohio App. LEXIS 2474, at *9-*10; State v.Brown (1989), 65 Ohio App.3d 322, 328; State v. Bloemer (Sept. 25, 1987), 4th Dist. No. 1321, 1987 Ohio App. LEXIS 8899, at *6.
 {¶ 27} The state does not argue the admissibility of this evidence, but argues that the admission of Boyle's prior conviction constitutes harmless error. Error in the admission of evidence is harmless if there is no reasonable possibility that exclusion of the evidence would have affected the result of this trial. State v. Webb, 70 Ohio St.3d 325, 335, 1994-Ohio-425
("[n]onconstitutional error is harmless if there is substantial other evidence to support the guilty verdict") (citations omitted).
 {¶ 28} We find that the admission of Boyle's prior conviction for menacing was prejudicial and warrants the reversal of all three of Boyle's convictions. The admission of this evidence impermissibly impeached Boyle's credibility before the jury and created the impression of Boyle as an inherently violent individual.
 {¶ 29} Regarding the admission of prior convictions into evidence, the Ohio Supreme Court has observed: "The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand." State v.Allen (1987), 29 Ohio St.3d 53, 55. Even when such evidence is properly before the jury, the trial court must consider its prejudicial effect. Evid.R. 609(A)(2). When the prior conviction is for the same crime with which a defendant is presently charged, the risk of unfair prejudice is greater. The natural tendency of prior conviction evidence in this situation is to instill in the minds of the jurors the idea that "if he did it before, he probably did it this time." State v. Goney (1993),87 Ohio App.3d 497, 502, citing Gordon v. United States
(C.A.D.C. 1967), 383 F.2d 936, 940 (Burger, J.). Therefore, "those convictions which are for the same crime should be admitted sparingly." Id. To counteract the prejudicial tendency of such evidence, "the trial court should immediately instruct the jury concerning the limited purpose for which the evidence is being offered." Goney, 87 Ohio App.3d at 503; State v. Wright
(Jun. 24, 1998), 7th Dist. No. 96-CO-34, 1998 Ohio App. LEXIS 3260, at *7; State v. Whited (Oct. 20, 1983), 8th Dist. No. 46586, 1983 Ohio App. LEXIS 16017, at *7.
 {¶ 30} We disagree with the trial court that Boyle's prior conviction was "not character evidence at all."[1] The prosecution's evidence of Boyle's prior conviction, created the impression of Boyle's character as a violent individual, who had not only previously threatened physical harm, but had attempted also to cause it. This evidence also impugned Boyle's credibility, as the prosecution intended it to do. There were notable discrepancies between the trial testimony of Boyle, Bacorn, and Deputy Copen. The prosecution's impeachment of Boyle improperly undermined Boyle's account of the events as well as his motivation for the actions he took that evening. Finally, the admission of the prior conviction distracted the jury's attention from the real issues before it, i.e., Boyle's pending charges. As a result of the impeachment, two witnesses were called to the stand to give testimony not only to the fact of the prior conviction but also to the details of the prior offense, all of which had no direct relevance to the pending charges. The effect of this prejudice was compounded by the trial court's failure to give any limiting instruction as to the permissible use of this evidence. Cf. State v. Moissis, 11th Dist. No. 2000-L-187, 2002-Ohio-4955, at ¶ 38 (noting that a limiting instruction may be sufficient to counteract the potential prejudice of admitting a prior conviction); State v. Rivera (1994),99 Ohio App.3d 325, 330 (same). Boyle's third assignment of error is sustained.
 {¶ 31} Boyle argues under his fourth assignment of error that the trial court erred by failing to instruct the jury that a lawful arrest is an essential element of the crime of resisting arrest. Since Boyle failed to object to the jury instructions as given, we must consider this assignment under a plain error standard of review. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For Crim.R. 52(B) to apply, a reviewing court must find (1) that there was an error, i.e., a deviation from a legal rule; (2) that the error was plain, i.e., an "obvious" defect in the trial proceedings; and (3) that the error affected "substantial rights," i.e., affected the outcome of the trial. State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68 (citations omitted).
 {¶ 32} This court has previously held that the failure of the trial court to instruct the jury that a lawful arrest is an essential element of resisting arrest constitutes plain error for the purpose of Crim.R. 52(B). State v. Wilcox (Oct. 25, 1996), 11th Dist. No. 95-A-0060, 1996 Ohio App. LEXIS 4676, at *3-*5;State v. Hendren (Apr. 19, 1996), 11th Dist. No. 95-A-0051, 1996 Ohio App. LEXIS 1552, at *5; cf. In re Winship (1970),397 U.S. 358, 364 ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). In the present case, the trial court did instruct the jury that a "lawful arrest" is an element of resisting arrest, although it failed to define what constitutes a lawful arrest. In this situation, we hold that the failure to define a "lawful arrest" is not error. Defense counsel did not request the court to include a definition of lawful arrest in its instruction to the jury. Nor was the legality of Boyle's arrest called into question at trial. Boyle's fourth assignment of error is without merit.
 {¶ 33} In Boyle's fifth assignment of error, Boyle argues that the trial court erred by imposing a fine in addition to jail time without inquiring into his ability to pay a fine and without justifying its decision to impose both a fine and jail time. Former R.C. 2929.22(E) prohibits the imposition of "a fine in addition to imprisonment for a misdemeanor unless a fine is specially adapted to deterrence of the offense or the correction of the offender" or "the offense has proximately resulted in physical harm to the person or property of another."[2]
Former R.C. 2929.22(F) provides that the court may not impose a fine that "exceed[s] the amount that the offender is or will be able to pay * * * without undue hardship to the offender or the offender's dependents." These sections have been construed so as to "impose an affirmative duty upon the court to justify its decision to impose both a fine and imprisonment for a misdemeanor" and to inquire into an offender's ability to pay the fine imposed. State v. Polick (1995), 101 Ohio App.3d 428, 432. The failure to consider "whether a defendant will be able to pay an imposed fine without undue hardship" constitutes an abuse of discretion. Id., citing State v. Stevens (1992),78 Ohio App.3d 847, 851.
 {¶ 34} In the present case, the trial court failed to make any inquiry into Boyle's ability to pay the fine without undue hardship. At the sentencing hearing, the trial court granted Boyle work release privileges during his incarceration at the request of defense counsel. This concession on the part of the trial court, however, falls short of fulfilling the court's duty to inquire into Boyle's ability to pay the fine imposed without undue hardship. Therefore, the trial court abused its discretion by imposing the fine without complying with R.C. 2929.22(F).State v. Remy, 4th Dist. No. 02CA2664, 2003-Ohio-2600, at ¶¶ 34-35; State v. Williams, 7th Dist. No. 01 CA 221, 2002-Ohio-5022, at ¶¶ 32-36; State v. Riffle, 5th Dist. No. 01 CA 53, 2002-Ohio-4265, at ¶ 13; State v. Spiess, 6th Dist. No. WM-01-015, 2002-Ohio-2051, 2001 Ohio App. LEXIS 1974, at *2-*3;State v. Cooper (2001), 144 Ohio App.3d 316, 319; Polick,101 Ohio App.3d at 432. Boyle's fifth assignment of error is sustained.
 {¶ 35} In Boyle's sixth assignment of error, Boyle argues that the trial court erred by sentencing him to 400 days of jail time, with 200 days suspended, on the grounds that the trial court's sentence, in effect, constitutes the imposition of consecutive sentences, contrary to law. At the sentencing hearing, the trial court stated vaguely that it was "merging" the sentences for theft, resisting arrest, and aggravated menacing. The result of this sentencing procedure is that this court is unable to effectively review the sentence imposed by the trial court. Specifically, did the trial court believe this was a true "merger" of the facts of one count into another, or did the trial court intend to impose identical sentences as to each count and then run them concurrently? As written, it is impossible to determine from the trial court's judgment entry what part of Boyle's sentence corresponds to each conviction. If, after remand, Boyle is again tried and convicted, the trial court should impose sentence on Boyle so that a reviewing court is able to determine the actual sentence imposed for each conviction, and whether the trial court somehow found an actual merger, an unlikely situation here. Boyle's sixth assignment of error has merit.
 {¶ 36} Under the seventh assignment of error, Boyle argues that the trial court's restitution order is contrary to law. In its finding that Boyle was guilty of theft, the jury set the value of Bacorn's wood at fifty dollars. At the sentencing hearing, the trial court ordered Boyle to "pay up to five hundred dollars in restitution" as "determined by the Adult Probation Department." As reported in the presentence investigation report, the probation department fixed the amount of restitution at $490.
 {¶ 37} A trial court is authorized by statute to require an offender "to make restitution * * * for all or part of the value of the property that is the subject of any theft offense." Former R.C. 2929.21(E). "Generally, the right to order restitution is limited to the actual damage or loss caused by the offense of which the defendant is convicted." State v. Williams (1986),34 Ohio App.3d 33, 34. It is the responsibility of the trial court to determine the amount of restitution. State v. Cockerham
(1997), 118 Ohio App.3d 767, 771; R.C. 2929.18(A)(1) ("[a]t sentencing, the court shall determine the amount of restitution to be made by the offender"). Where the amount of damages caused by a defendant's theft offense has been determined at trial, it is not necessary to hold a separate hearing to determine the amount of restitution. State v. Lake (1996),111 Ohio App.3d 127, 133.
 {¶ 38} In the present case, the trial court erred by delegating to the probation department the determination of the amount of restitution. In the first instance, the jury had already made a finding as to the value of the property stolen by Boyle. The trial court could not ignore this finding. Cf. R.C.2945.11 ("the jury is the exclusive judge of all questions of fact"); State v. Nutter (1970), 22 Ohio St.2d 116, 118
("Sections 5 and 10 of Article I of the Ohio Constitution, which declare the inviolability of a jury trial and guarantee an accused an impartial jury, inferentially require that factual questions relating to the crime are within the exclusive province of the jury"). Second, it was improper for the trial court to have the probation department determine the amount of restitution. It is the responsibility of the trial judge, not the department of probation, to determine an offender's sentence. We note that, under the felony restitution statute R.C.2929.18(A)(1), it has been held that a trial court errs by delegating this responsibility to the probation department.Cockerham, 118 Ohio App.3d at 771 ("it is not proper to allow the probation department to make the determination as to what the amount of restitution would be") (citation omitted). We are persuaded that this holding applies equally to determining the amount of restitution under the misdemeanor restitution statute. Here, the trial court was bound by the jury's finding as to the value of Bacorn's wood. Boyle's seventh assignment of error is sustained.
 {¶ 39} For the foregoing reasons, we sustain Boyle's third, fifth, sixth and seventh assignments of error and overrule Boyle's first, second, and fourth assignments of error. Accordingly, the judgment of the Ravenna Division of the Portage County Municipal Court is reversed and this cause is remanded for new trial.
Ford, P.J., and Christley, J., concur.
[1] We note that evidence of Boyles' prior conviction could have been introduced under Evid.R. 404 and 405 as character evidence only if Boyle had "opened the door" by first introducing evidence of his good character.
[2] We note that the sections of the Revised Code that govern misdemeanor sentencing have been significantly altered, effective January 1, 2004, by Amended Substitute House Bill 490, the Ohio Criminal Sentencing Act. These changes do not affect our consideration of Boyle's sentence since the alleged crimes and sentence both occurred prior to January 1, 2004.