OPINION
{¶ 1} Defendant-appellant, Daniel Boyle ("Boyle"), appeals his convictions for petty theft, a first degree misdemeanor in violation of R.C. 2913.02(A)(1), aggravated menacing, a first degree misdemeanor in violation of R.C. 2903.21(A), and resisting arrest, a second degree misdemeanor in violation of R.C. 2921.33(A). For the following reasons, we affirm the decision of the court below.
 {¶ 2} Boyle operates Boyle's Automotive Inc., on Brady Lake Road in Franklin Township, Ohio. Part of the property at Brady Lake Road is used for automotive repair, part of the property was used for a salvage business, and part of the property was leased to two tenants, David Moore and Robert Bacorn. Bacorn operated a tree service and rented space on Boyle's property to store equipment.
 {¶ 3} In May 2001, Bacorn unloaded a five ton truck of unsplit wood on Boyle's property that Bacorn intended to use as firewood. Moore complained to Boyle that the wood interfered with his business. In June or July of 2001, at Boyle's request, Moore had the wood moved to the back part of Boyle's property used for dumping biodegradable materials. Moore regularly dumped grass and leaves from his landscaping business in this area, and Bacorn himself had, on one occasion, dumped a load of wood chips. When Bacorn asked Boyle about his wood, Boyle told him that he had the wood moved to the back of the property because Moore needed the space. Bacorn did not object to the wood being moved and never bothered to check the new location of the wood at the back of Boyle's property.
 {¶ 4} The back of Boyle's property rests on the edge of an embankment. As the amount of material accumulated in this area, water was not draining properly and it was difficult to access the salvage areas of the property. Moore was responsible for maintaining this area. Some time after the summer of 2001, Moore sought and was given Boyle's permission to bring in a bulldozer and grade the area. The wood chips, grass clippings, leaves and other materials, including Bacorn's wood, were either buried or pushed over the embankment. Boyle testified he did not consider what would happen to Bacorn's wood when the area was graded.
 {¶ 5} On December 24, 2001, Bacorn went with his nephew to Boyle's property to collect his wood. Bacorn claims he searched all over Boyle's property but could not locate the wood. At about 1:00 p.m., Bacorn went to Boyle's home on Lakeview Drive in Brady Lake and inquired about the location of his wood. According to Bacorn, Boyle said that he "got rid" of the wood because "it was bad." When Bacorn replied that the wood was not bad, Boyle began to swear at him and insult him. According to Boyle, he told Bacorn the wood had been bull-dozed. Boyle told Bacorn to get all of his equipment off Boyle's property. According to Bacorn, Boyle concluded the tirade by saying that he should just get a ball bat and kill Bacorn. Boyle admits to threatening Bacorn, but claims that his threat was conditional on Bacorn leaving his property. Bacorn left Boyle's home and contacted the Portage County Sheriff's Department. Deputy Harold J. Copen ("Copen"), met with Bacorn at Boyle's property on Brady Lake Road.
 {¶ 6} Based on Bacorn's account of the incident at Boyle's home, Deputy Copen believed there was enough evidence to charge Boyle with theft and aggravated menacing. Deputy Copen intended to file the charges against Boyle and have a summons issued. Deputy Copen decided first, however, to go to Boyle's home to verify Boyle's name, date of birth, and social security number. Deputy Copen spoke with Boyle outside the side door of Boyle's home. Deputy Copen told Boyle that he was there regarding an incident involving wood that occurred at Boyle's Automotive and asked for his social security number. As Deputy Copen was taking Boyle's information, Boyle became increasingly agitated and argumentative.
 {¶ 7} At this point, Deputy Copen's and Boyle's accounts of the events differ substantially. According to Deputy Copen, he tried to explain to the increasingly agitated Boyle that he did not come there to arrest him, but only to issue a summons, and that it was Christmas Eve and that he did not want to arrest him. Boyle retorted, "Go ahead and arrest me then." Deputy Copen testified that this exchange was repeated three or four times. Deputy Copen then advised Boyle that he was under arrest. Deputy Copen explained that he decided to arrest Boyle "because of his volatile attitude toward me. * * * [H]e was out of control. It was a situation where I had probable cause based upon the * * * aggravated menacing of Mr. Bacorn. And I arrested him based upon that charge." Boyle responded by saying that he was not under arrest and that he was going into the house. Deputy Copen testified that it was not proper police procedure to allow a suspect to re-enter his dwelling. Therefore, he tried to grab Boyle to prevent him from going back in the house.
 {¶ 8} Boyle, on the other hand, testified that Deputy Copen baited him by asking how he would like to spend Christmas in jail. Boyle claimed to be exasperated with Deputy Copen and told him that he was going back inside to call 911. At this point, according to Boyle, Deputy Copen told him he was under arrest. After turning around, Boyle testified that Deputy Copen struck him in the back.
 {¶ 9} It is undisputed that Boyle re-entered his house, that Deputy Copen followed close behind, and that the confrontation escalated inside the house. Deputy Copen radioed for backup and Boyle's girlfriend called 911. Boyle admitted that, inside the house, he threatened Deputy Copen saying that he would "beat his a**" or "smash your face in." As other police officers began to arrive, Boyle voluntarily went with Deputy Copen outside and was arrested.
 {¶ 10} In November 2002, Boyle was tried for the theft of Bacorn's wood, the aggravated menacing of Bacorn, the aggravated menacing of Deputy Copen, and resisting arrest. The jury acquitted Boyle of the aggravating menacing charge relating to Bacorn and found Boyle guilty on the remaining charges. This court reversed Boyle's convictions and remanded the matter for a new trial in March 2004. State v. Boyle, 11th Dist. Nos. 2003-P-0027, 2003-P-0028, and 2003-P-0029, 2004-Ohio-1531.
 {¶ 11} In October 2004, Boyle was again tried before a jury and found guilty of theft, aggravated menacing, and resisting arrest. Boyle was sentenced to 100 days in jail and a $250 fine plus court costs for theft; to 100 days in jail and a $500 fine plus court costs for aggravated menacing; and to 90 days in jail and $250 fine plus court costs for resisting arrest. The trial court suspended 30 days from the jail sentences for theft and aggravated menacing and suspended 20 days from the jail sentence for resisting arrest on the condition that Boyle commit no similar offenses for one year and pay the fines and court costs within 90 days.
 {¶ 12} Boyle timely raises the following assignments of error for review:
 {¶ 13} "[1.] The court committed error prejudicial to appellant when it failed to sustain his motion for judgment of acquittal on the offense of theft.
 {¶ 14} "[2.] The court committed error prejudicial to appellant when it failed to sustain his motion for judgment of acquittal on the offense of resisting arrest.
 {¶ 15} "[3.] The jury verdict of guilty of the offense of aggravated menacing is against the manifest weight of the evidence.
 {¶ 16} "[4.] The jury verdict of guilty of theft is against the manifest weight of the evidence."
 {¶ 17} Under the Ohio Rules of Criminal Procedure, a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). To preserve the issue of insufficient evidence for appellate review, a defendant must move the trial court for a judgment of acquittal. State v. Beesler, 11th Dist. No. 2002-A-0001, 2003-Ohio-2815, at ¶ 21 ("We have consistently held that an appellant must move for a Crim.R. 29 motion for acquittal at trial in order to preserve the right to appeal on the basis of the sufficiency of the evidence.") (citation omitted). A defendant may move for a judgment of acquittal "after the evidence on either side is closed." Crim.R. 29(A). Where a defendant moves for acquittal at the close of the state's evidence and proceeds to introduce evidence in his defense, the defendant must renew the motion for acquittal at the close of his defense or waive the issue for appeal. State v. Novak, 11th Dist. No. 2003-L-077, 2005-Ohio-563, at ¶ 16 (citations omitted).
 {¶ 18} The State argues, preliminarily, that Boyle has waived the issue of sufficiency. The record demonstrates that Boyle made a Crim.R. 29 motion at the close of the State's evidence and that he renewed his motion at the close of his defense. However, the State called a rebuttal witness to testify after the close of Boyle's defense, but on the day after Boyle's defense rested. The transcript contained in the record is a partial transcript and does not indicate whether Boyle renewed his motion at the close of the rebuttal witness' testimony. Therefore, the State argues, we must presume regularity in the proceedings and affirm the trial court's findings that the convictions were supported by sufficient evidence. We disagree.
 {¶ 19} A defendant is considered to have waived the sufficiency issue by presenting evidence in his defense because, by introducing evidence, the defendant tacitly acknowledges that the State has introduced sufficient evidence that must be countered. Cf. United States v.Calderon (1954), 348 U.S. 160, 164 n. 1 ("[b]y introducing evidence, the defendant waives his objections to the denial of his motion to acquit");Halkias v. Wilkoff Co. (1943), 141 Ohio St. 139, 146, overruled byHemlick v. Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71, at paragraph one of the syllabus ("Where a motion * * * for a directed verdict made at the conclusion of plaintiff's evidence is overruled, the defendant has an election either to stand on his exception to the ruling or to proceed with his defense; and if he accepts the ruling, however erroneous it may be, and proceeds with his defense, introducing evidence on his own behalf, he thereby waives his right to rely on his original motion.") (citations omitted).
 {¶ 20} Here, Boyle properly renewed his motion for acquittal on all charges at the close of his defense. At this time, the court overruled the Boyle's motion as to the aggravated menacing and resisting arrest charges and deferred ruling on the theft charge until after the jury returned its verdict. Crim.R. 29(B) ("the court may reserve decision on the motion, submit the case to the jury and decide the motion * * * after it returns a verdict of guilty"). After the jury returned a verdict of guilty, the court overruled Boyle's motion as to the theft charge.
 {¶ 21} As the State points out, there is no evidence in the record that Boyle renewed his motion for acquittal at the close of the rebuttal witness' testimony. Boyle has, therefore, waived his right to challenge the sufficiency of the evidence relative to the charges of aggravated menacing and resisting arrest. State v. Murray, 11th Dist. No. 2003-L-045, 2005-Ohio-1693, at ¶ 45 ("a defendant must renew his motion for acquittal at the close of all evidence in order to preserve this issue for review") (emphasis sic). Boyle's right to challenge the sufficiency of the evidence as to the charge of theft, however, is preserved. Boyle's Crim.R. 29 motion relative to this charge remained pending at the close of all the evidence. Therefore, it was not necessary to renew the motion relative to the theft charge. Accordingly, we will consider Boyle's arguments challenging the sufficiency of the evidence relative to the charge of theft, the first assignment of error, but not relative to the charge of resisting arrest, the second assignment of error.
 {¶ 22} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e. "whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, quoting, Black's Law Dictionary (6 Ed. 1990), 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307, 319; State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *14. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 23} Weight of the evidence, by contrast, involves "the inclination of the greater amount of credible evidence." Thompkins,78 Ohio St.3d at 387 (emphasis sic) (citation omitted). Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982),70 Ohio St.2d 79, at syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror."Thompkins, 78 Ohio St.3d at 387. The reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 24} We will first address Boyle's first and fourth assignments of error, challenging his conviction for theft. In order to convict Boyle of theft, the State bore the burden of proving, beyond a reasonable doubt, that Boyle "knowingly obtain[ed] or exert[ed] control over * * * the property [of another] * * * [w]ithout the consent of the owner" and did so "with purpose to deprive the owner of [the] property." R.C. 2913.02(A).
 {¶ 25} There is no question that Boyle exerted control over Bacorn's wood without his consent. Boyle did so when he told Moore to move the wood to the back of his property and again when he allowed Moore to hire a bulldozer to grade the back of his property where the wood was located. The issue is whether Boyle took either action with the intent to deprive Bacorn of the wood, i.e. "dispose" of the wood "so as to make it unlikely that the owner will recover it." R.C. 2913.01(C)(2). Specifically, whether Boyle knowingly and purposefully deprived Bacorn of the wood when he allowed the area where the wood was located to be bulldozed.
 {¶ 26} Relevant evidence on this issue includes: Bacorn testified that Boyle told him that he "got rid" of the wood because it was bad; Boyle denied saying that he got rid of the wood because it was bad. The jury found Bacorn more credible than Boyle on this issue. Based on the record, we cannot say that the jury lost its way in reaching that decision.
 {¶ 27} "A person acts purposely when it is specific intention to cause a certain result * * *." R.C. 2901.22(A). There is no direct evidence that Boyle had the specific intention of depriving Bacorn of his wood. However, it is not uncommon, in the absence of the defendant's own admission, to produce direct evidence of a defendant's specific intent.State v. Mundy (1994), 99 Ohio App.3d 275, 293 ("A mental state is not, absent an admission of it, readily evident to an onlooker."). For this reason, circumstantial evidence is competent to prove a defendant's intent or state of mind. Midland Steel Products Co. v. Int'l Union,United Auto., Aerospace and Agricultural Implement Workers of Am., Local486 (1991), 61 Ohio St.3d 121, 128.
 {¶ 28} In this case, the evidence sufficiently demonstrates that Boyle knowingly deprived Bacorn of his wood. Boyle was aware that Bacorn's wood had been moved to a part of his property that was reserved for dumping biodegradable materials and Boyle knew, or should have known, that giving Moore permission to bulldoze that area would result in Bacorn being deprived of his wood. R.C. 2901.22(B). Moreover, the jury could find that Boyle knowingly and purposely intended to deprive Bacorn of his wood from Boyle's statement that he "got rid" of the wood and the evidence that the wood was not, in fact, bad. The jury's verdict is further buttressed by evidence that the other alleged business motives for grading the property are suspect, that Boyle's property had never needed bulldozing previously and that Moore's landscaping business normally would not have been operating in December, when the area was allegedly graded. This evidence is sufficient for the jury to infer Boyle's intent to knowingly and purposely deprive Bacorn of his wood.
 {¶ 29} Boyle's conviction for theft is not against the manifest weight of the evidence. Bacorn testified that Boyle "got rid" of his wood because it was bad. Although Boyle denied making this statement, that denial is not conclusive. "Weight is not a question of mathematics, but depends on its effect in inducing belief." Thompkins, 78 Ohio St.3d at 387
(citation omitted) (emphasis sic). In this case, the jury chose to credit Bacorns' testimony over that of Boyle. Unless Bacorn's testimony was completely lacking in credibility, which it was not, this court will not disturb the jury's verdict. Considering this evidence as a whole, we cannot say the jury lost its way in concluding that Boyle's intention was to deprive Bacorn of the wood.
 {¶ 30} Boyle's first and fourth assignments of error are without merit.
 {¶ 31} Boyle's second assignment of error challenges the sufficiency of the evidence for his conviction of resisting arrest. As discussed above, Boyle failed to renew his motion for acquittal at the close of all the evidence and has, thereby, waived his right to raise this argument on appeal. See Boyle, 2004-Ohio-1531, at ¶¶ 17-18, and cases cited therein; see, also, Murray, 2005-Ohio-1693, at ¶¶ 42 (reaffirming the position of this court that "[w]hen a defendant fails to renew his motion for acquittal at the close of all evidence in a jury trial, he waives any error with regard to the sufficiency of the evidence"); State v.Dinapoli, 11th Dist. No. 2003-L-169, 2005-Ohio-824, at ¶ 22; State v.Scarl, 11th Dist. No. 2003-P-0125, 2004-Ohio-7227, at ¶ 67; Novak,
2005-Ohio-563, at ¶ 17.
 {¶ 32} In his third assignment of error, Boyle argues that his conviction for aggravated menacing was against the manifest weight of the evidence. In order to convict Boyle of aggravated menacing, the State bore the burden of proving, beyond a reasonable doubt, that Boyle "knowingly cause[d] another to believe that [he] will cause serious physical harm to the person * * *." R.C. 2903.21(A).
 {¶ 33} Boyle argues that his conviction for aggravated menacing was against the manifest weight of the evidence because "the only witness, as well as the only evidence, presented by the by the state in support of the aggravated menacing charge was the testimony of Deputy * * * Copen" and his testimony is not credible. We disagree.
 {¶ 34} Boyle himself testified that he threatened Deputy Copen after Deputy Copen had entered his house. Boyle variously admitted to telling Deputy Copen that he would "beat his a**," "beat his head in," and "smash his face in." Both Deputy Copen and Boyle described the situation in Boyle's house as tense and volatile. There is also evidence that Boyle is a full foot taller than Deputy Copen. A jury could very reasonably conclude that these threats caused Deputy Copen to believe that Boyle would cause him serious physical harm. Cf. R.C. 2901.01(A)(5)(e) (defining "serious physical harm," in part as "[a]ny physical harm * * * that involves any degree of prolonged or intractable pain").
 {¶ 35} Boyle's third assignment of error is without merit.
 {¶ 36} For the foregoing reasons, Boyle's assignments of error are without merit. The decision of the Portage County Municipal Court, Ravenna Division, finding Boyle guilty of theft, resisting arrest, and menacing is affirmed.
O'Neill, J., concurs in judgment only, Rice, J., concurs in judgment only.