OPINION
{¶ 1} Appellant, Lonnie R. Nelson, Jr. ("Nelson"), appeals from the judgment entered by the Ashtabula County Court of Common Pleas. Nelson was sentenced to a three-year prison term following his convictions on two counts of burglary and one count of attempted aggravated arson.
 {¶ 2} On May 27, 2001, Nelson was at Delaney's bar in Ashtabula, Ohio. He was at the bar from 8:00 p.m. until closing. During this time, he consumed "quite a bit" of beer. While at the bar, he received two phone calls from his ex-girlfriend, Lona Hoffacher, and her new boyfriend, Les Kessler. Both of these phone calls were made to Delaney's, and Nelson took the calls from a phone at the bar. Nelson testified that both calls were threatening and the second call invited him to fight Kessler.
 {¶ 3} After receiving the second phone call, near closing time, Nelson decided to accept Kessler's invitation to fight. He then walked to Hoffacher's home, where he had previously lived with her. When he arrived at the residence, no one was there. Nelson testified that he entered the home through an unlocked back door; however, the state presented evidence that he entered through a missing window that had been covered with plastic.
 {¶ 4} Nelson testified that he fell asleep on the couch while waiting for Hoffacher and Kessler to return. He woke up several hours later and discovered a laundry basket full of Kessler's clothing. He flicked matches into the clothing but thought that all of the matches had failed to light the clothes. He then went upstairs to Hoffacher's bedroom and fell asleep. He awoke to the house being filled with smoke. He ran downstairs and extinguished the fire in the laundry basket. Witnesses outside the residence noticed the smoke, but Nelson came out of the house and told them that there was no need to call the fire department, as he had put out the fire. Shortly after Nelson put out the fire, Hoffacher arrived home, and the two engaged in a heated argument.
 {¶ 5} Sherly Santiago, a clerk at a gas station across the street, testified that she witnessed Hoffacher and Nelson leave the house and have an argument on the front lawn. Hoffacher then ran back into the house and closed the door. Santiago testified that Nelson kicked in the door and went into the house. Santiago stated she could not distinguish any of the words of the argument. Shortly after witnessing these events, Hoffacher's young son approached Santiago and asked her to call 911, because "he was hitting his mom."
 {¶ 6} As a result of these incidents, several calls were placed to 911. However, Nelson left Hoffacher's home before the authorities arrived. Nelson testified that he walked to a Taco Bell restaurant, where his current girlfriend, Bobbie Mason, picked him up and took him to her residence. The police arrested Nelson at Mason's home the same day.
 {¶ 7} The police discovered that Hoffacher's house had been ransacked. In addition to the burnt clothing and the damaged plastic covering the window, glass was smashed out of a microwave door and a curio cabinet, a beer bottle was broken, a VCR was thrown off a television, and a vase and some lamps were knocked over. Finally, there was paint thrown all over the walls, bedspread, and clothing in one of the bedrooms. In his statement to the police, Nelson admitted starting the fire and throwing the paint in Hoffacher's bedroom.
 {¶ 8} Nelson was indicted on vandalism, burglary, aggravated burglary, and attempted aggravated arson. Nelson pled not guilty to all of the charges against him, and a jury trial was held. Following the state's case in chief, Nelson moved for acquittal on all counts. The trial court granted Nelson's motion for acquittal on the vandalism charge. In addition, the trial court reduced count three from aggravated burglary to burglary. Thereafter, the jury convicted Nelson of count two of the indictment, burglary, in violation of R.C. 2911.12(A)(3), amended count three of the indictment, burglary, in violation of R.C.2911.12(A)(1), and count four of the indictment, attempted aggravated arson, in violation of R.C. 2923.02 and 2909.02(A)(2).
 {¶ 9} Nelson was sentenced to three-year terms for each of the three convictions. He was ordered to serve these sentences concurrently.
 {¶ 10} Nelson raises three assignments of error on appeal. Nelson's first assignment of error is:
 {¶ 11} "The appellant's convictions for burglary and attempted aggravated arson were not supported by sufficient evidence."
 {¶ 12} A court shall grant a motion for acquittal if the evidence presented is insufficient to sustain a conviction.[1] When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[2]
 {¶ 13} Nelson was convicted of count two of the indictment, burglary, in violation R.C. 2911.12(A)(3), which states, in part:
 {¶ 14} "(A) No person, by force, stealth or deception, shall do any of the following:
 {¶ 15} " ***
 {¶ 16} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense[.]"
 {¶ 17} This first burglary charge concerned Nelson's initial entrance into the residence about 2:30 a.m. Nelson concedes that the state presented sufficient evidence to show that the residence was an occupied structure and that he entered with the purpose to commit a criminal offense. However, Nelson contends that the state provided insufficient evidence to show that he trespassed on the property.
 {¶ 18} The relevant definition of criminal trespass is:
 {¶ 19} "(A) No person, without privilege to do so, shall do any of the following:
 {¶ 20} "(1) Knowingly enter or remain on the land or premises of another[.]"[3]
 {¶ 21} Nelson testified that his name was on the lease of the property. He states that the home was "section eight" housing and he was on the initial lease with Hoffacher. He argues that he could not have trespassed into the home, because he had a legal right to be in the home, thus, he was entering his own residence, not the residence of another. We disagree.
 {¶ 22} "A spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling."[4] In Lilly, the Supreme Court of Ohio held that a person can commit burglary against another even if they are the legal owner of the property, provided that another person is in control or custody of the property.[5] The court's rationale was that the burglary statute was designed to protect the dweller.[6]
 {¶ 23} Accordingly, even if Nelson was on the lease, the state presented evidence that Hoffacher was exercising custody and control of the residence. Specifically, the state presented evidence that Nelson did not use a key to gain access to the residence but, rather, entered the house by pushing in the plastic covering a window. Nelson indicated in his statement to the police that Kessler's clothes were in the basket he burned. He also stated he threw the paint in the bedroom because he knew that was where Kessler and Hoffacher slept. Further, he stated that he had broken up with Hoffacher, and was dating another woman on the night in question. Finally, Officer John A. Bainton, III, of the Ashtabula Police Department testified that Nelson indicated that he was living with his current girlfriend at the time of the incident. Taken together and viewed in a light most favorable to the prosecution, this evidence is sufficient evidence to show that Hoffacher had custody and control of the premises. Thus, pursuant to the holding in Lilly, Nelson could be convicted of burglary, even if his name was on the lease.
 {¶ 24} Nelson also argues that there was insufficient evidence to sustain his conviction on count three of the indictment, the second count of burglary, in violation of R.C. 2911.12(A)(1). This second count of burglary concerned the events of the following morning, around 11:00 a.m., when Nelson was arguing with Hoffacher and kicked the door open.
 {¶ 25} The trial court reduced the charge from aggravated burglary, in violation of R.C. 2911.11(A)(1), to burglary, in violation of R.C. 2911.12(A)(1). The trial court found that there was insufficient evidence to satisfy the physical harm element of R.C. 2911.11(A)(1).
 {¶ 26} There was evidence presented that Nelson was hitting Hoffacher. Sherly Santiago testified that Hoffacher's young son walked over to the gas station and told here to call 911 because "he was hitting his mom." The trial court initially sustained an objection to this testimony, but then allowed the testimony, finding that it fell within the excited utterance exception to the hearsay rule.
 {¶ 27} When ruling on Nelson's motion for acquittal, the trial court noted that the only evidence regarding physical harm was the hearsay statement of Hoffacher's son. The trial court found "even though I think the statement might be admissible as excited utterance, I don't think that proves there was any physical harm or even an attempt to cause physical harm." The trial court reduced count three from aggravated burglary to burglary, in violation of R.C. 2911.12(A)(1), which reads:
 {¶ 28} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 29} "(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]"
 {¶ 30} Nelson asserts that the state did not present sufficient evidence to show that he entered the residence with the purpose to commit a criminal offense. We agree.
 {¶ 31} A person may form the intent to commit a criminal offense at any time during the trespass.[7] As "intent exists only in the mind of the accused, it must be determined from the surrounding facts and circumstance[s]."[8] In this case, there was insufficient evidence concerning the surrounding facts and circumstances to determine Nelson's mental state.
 {¶ 32} The trial court found, regarding the aggravated burglary charge, that the child's hearsay statement was insufficient to show that Nelson caused or even attempted to cause physical harm to Hoffacher. Since the trial court found that this statement was insufficient to show that Nelson caused or attempted to cause physical harm, it follows that the statement is likewise insufficient to show that Nelson intended to do any of these things as the underlying criminal offense when he entered the residence.
 {¶ 33} Other than the hearsay statement from the child, the only evidence presented by the state on this count was the testimony of Santiago. She stated that she witnessed Nelson kicking in the door and she witnessed the argument between Nelson and Hoffacher. However, she stated she could not make out any words from the two individuals.
 {¶ 34} Officer Bainton testified regarding the statement given by Nelson on the day of his arrest. He testified that Nelson had stated that he might have went through the back door but he did not intentionally kick it. He further indicated that Nelson stated he was in an argument with Hoffacher but denied hitting her. This was the extent of Officer Bainton's testimony regarding the statement pertaining the second burglary count. A review of Nelson's statement, admitted as state's exhibit twenty-three, provides no additional details about the second alleged burglary.
 {¶ 35} Through the testimony of Santiago and the statement of Nelson, the state provided sufficient evidence to show that Nelson trespassed when he kicked in the door. However, the state also needed to provide evidence that Nelson intended to commit a crime when he entered the residence. The only evidence presented to show an inference to Nelson's mental state was the hearsay statement from Hoffacher's son. However, the trial court ruled that this statement was insufficient to meet the requisite element of R.C. 2911.11(A)(1), which requires a showing that the defendant inflicted, or attempted to inflict, bodily harm on another. The hearsay statement from the child, "he was hitting his mom," was directly pertinent to R.C. 2911.11(A). A consistent ruling would require that the same statement be found insufficient to establish Nelson's mental state through circumstantial evidence.
 {¶ 36} Since the state failed to provide sufficient evidence regarding Nelson's state of mind when he trespassed the second time, specifically that he did so with the purpose of committing a criminal act within the residence, Nelson's first assignment of error has merit as it relates to the second burglary count.
 {¶ 37} Finally, Nelson contends that there was insufficient evidence presented to sustain his attempted aggravated arson conviction.
 {¶ 38} Nelson was charged with attempted aggravated arson. Accordingly, we turn to the attempt statute, R.C. 2923.02, which states, in pertinent part:
 {¶ 39} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 40} The offense was arson, codified as R.C. 2909.02, which states:
 {¶ 41} "No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 42} "***
 {¶ 43} "(2) Cause physical harm to any occupied structure."
 {¶ 44} Nelson is challenging the sufficiency of the evidence relating to the requisite mental state. The requisite mental state for aggravated arson is knowingly.[9] "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[10]
 {¶ 45} Officer Bainton testified that Nelson admitted in his statement that he flicked matches into the basket of clothes. Nelson also admitted that he awoke to a house full of smoke. He then extinguished the fire. Other witnesses also testified that they witnessed smoke coming out of the house.
 {¶ 46} There was sufficient evidence to show that Nelson was aware that his conduct would cause a certain result; i.e., cause physical damage to the house. He flicked "a few" matches into a basket of clothes inside the house. Nelson had to be aware that lighting a basket of clothes on fire inside a house would probably cause damage to the house.
 {¶ 47} Nelson's first assignment of error has merit as it relates to the second burglary count, the amended count three of the indictment, in violation of R.C. 2911.12(A)(1). Nelson's first assignment of error is without merit as it relates to the first burglary count, count two of the indictment, in violation of R.C. 2911.12(A)(3). Nelson's first assignment of error is also without merit as it relates to the attempted aggravated arson conviction.
 {¶ 48} Nelson's second assignment of error is:
 {¶ 49} "The appellant's convictions are against the manifest weight of the evidence."
 {¶ 50} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language:
 {¶ 51} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[11]
 {¶ 52} In our analysis of Nelson's first assignment of error, we held that there was insufficient evidence to support his second burglary conviction. Accordingly, Nelson's second assignment of error as it relates to this conviction is moot.
 {¶ 53} Regarding Nelson's first burglary conviction, the only element of the crime that was contested was whether Nelson was trespassing. As noted in our analysis of Nelson's first assignment of error, whether Nelson was actually on the lease is irrelevant, if it is shown that Hoffacher had custody and control of the premises. Nelson testified that he was still living with Hoffacher on the night in question. However, there was also evidence presented that Kessler was living with Hoffacher at the time. In addition, there was evidence presented that Nelson was living with his current girlfriend. We cannot say that the jury lost its way or created a miscarriage of justice by finding that Nelson did not live in Hoffacher's house.
 {¶ 54} Turning to Nelson's conviction for attempted aggravated arson. Nelson admitted flicking the matches into the clothes. The only evidence offered in defense was Nelson's testimony that he did not think the clothes would catch fire. The clothes, in fact, burned. Based on this evidence, we can not say that the jury lost its way or created a miscarriage of justice by convicting Nelson of attempted aggravated arson.
 {¶ 55} Nelson's second assignment of error is moot as it relates to the second burglary conviction. His second assignment of error is without merit as it relates to the first burglary conviction and the attempted aggravated arson conviction.
 {¶ 56} Nelson's third assignment of error is:
 {¶ 57} "The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 58} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance."[12] Moreover, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on lack of sufficient prejudice, *** that course should be followed."[13]
 {¶ 59} Nelson claims he received ineffective assistance of trial counsel, due to counsel's failure to introduce a copy of the lease for the residence where the crimes were committed. Nelson has not demonstrated that the lease actually bears his name. Nor has he demonstrated that the purported copy of the lease bearing his name was in effect at the time of the alleged crimes.
 {¶ 60} Based on our analysis of Nelson's first assignment of error, Nelson has failed to show any prejudice from his trial counsel's failure to introduce a copy of the purported lease. Pursuant to the Supreme Court of Ohio's holding in Lilly, even if Nelson had a property interest in the house as a tenant, he could still be convicted of burglary, if it is shown that someone else had custody and control of the premises.[14] Moreover, we note that Nelson testified that his name appeared on the lease. Accordingly, because there was evidence regarding the lease before the jury, Nelson has not shown that he was prejudiced by his trial counsel's failure to offer additional evidence regarding the lease, assuming such evidence existed.
 {¶ 61} Nelson's third assignment of error is without merit.
 {¶ 62} The judgment of the trial court is affirmed regarding Nelson's convictions for attempted aggravated arson and the first count of burglary in violation of R.C. 2911.12(A)(3). Nelson's second burglary conviction, amended count three of the indictment, in violation of R.C.2911.12(A)(1), is reversed. The matter is remanded to the trial court, first to enter a judgment of acquittal on amended count three, and then for resentencing on counts two and four.
DIANE V. GRENDELL, J., concurs,
[1] Crim.R. 29(A).
[2] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
[3] R.C. 2911.21
[4] State v. Lilly (1999), 87 Ohio St.3d 97, paragraph one of the syllabus.
[5] Id. at 102.
[6] Id.
[7] State v. Fontes (2000), 87 Ohio St.3d 527, syllabus
[8] State v. Blackburn, 11th Dist. No. 2001-T-0052, 2003-Ohio-605, at ¶ 21, citing State v. Flowers (1984), 16 Ohio App.3d 313, 314, overruled on other grounds.
[9] R.C. 2909.02, see, also, e.g., State v. Stambaugh (Sept. 30, 1999), 11th Dist. No. 97-T-0230, 1999 Ohio App. LEXIS 4656, at *7.
[10] R.C. 2901.22(B).
[11] (Citations omitted.) State v. Tompkins (1997), 78 Ohio St.3d 380,387.
[12] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth in Strickland v. Washington
(1984), 466 U.S. 668.
[13] Id. at 143, citing Strickland, at 697.
[14] State v. Lilly, supra.