OPINION
{¶ 1} Appellant, Dean A. Murray, appeals from the judgment entered by the Lake County Court of Common Pleas, convicting him of one count of felonious assault and one count of aggravated burglary, and sentencing him to a total of four years of imprisonment for these convictions. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} Brian and Karen Singer ("the victim" and "Karen," respectively) were married in March 2002, and they began living together in a trailer in Madison, Ohio. Their relationship often involved fighting and arguing, and Karen packed her belongings and moved out of the trailer in April 2002.
 {¶ 3} About a week after she moved out of the trailer, Karen was at a residence in Fairport with her brother, James Barnes ("James"); James' girlfriend, Kristina Hibbard ("Kristina"); and appellant. Various members of the group were drinking. Karen wanted the group to accompany her to the trailer to retrieve her remaining belongings. Around 2:30 a.m., she convinced the group to go to the trailer.
 {¶ 4} Upon arriving, Karen unlocked the door of the trailer with her key. Kristina, who testified for the defense at trial, stated that that Karen, James, and appellant entered the trailer. Kristina remained in the car.
 {¶ 5} There were several different versions of what actually occurred inside the trailer. The victim testified for the state and gave the following version of events. He indicated that, on the evening in question, he was drinking beer with some friends and returned home to his trailer at approximately 1:30 a.m. and fell asleep. He awoke about thirty minutes later to a loud bang on the side of the trailer, and he saw Karen, James, and appellant enter the trailer.
 {¶ 6} According to the victim, he asked them to leave. When Karen replied that she did not have to leave, the victim called 911. During this call, he heard appellant yell "he's calling the police," and James ripped the telephone jack out of the wall. The telephone went dead.
 {¶ 7} Thereafter, the victim testified that appellant entered his bedroom and slapped him in the face. The victim fought back. The fight escalated and moved to the living room, where James, appellant, and Karen all attacked him. The victim indicated that James hit him on the head with a large flashlight, and he indicated that he could have also been hit with a stick. Thereafter, James, Karen, and appellant departed. The victim found a stick covered with blood on the floor of the trailer.
 {¶ 8} James also testified for the state and provided another version of events. He indicated that he had been drinking with Karen and appellant, and Karen convinced the group to go to the trailer. James picked up a large flashlight, and appellant removed two table legs (the "sticks") from a stand. According to James, they grabbed these items because they believed there was a "50/50" chance that there might be an altercation. The group arrived at the trailer, and James testified that he entered the trailer with appellant and Karen.
 {¶ 9} Karen entered the bedroom and became involved in an altercation with the victim. Appellant went into the room to assist Karen. The altercation moved to the front of the trailer. When the victim grabbed James' necklace, James hit the victim with the flashlight. Appellant held the victim still while Karen further hit the victim. When the victim yelled, the group departed.
 {¶ 10} Karen testified for the defense, and her version of events is as follows. She testified that she had not been drinking on the night in question, and she indicated that she arrived at the trailer with appellant and James. According to Karen, they banged on the side of the trailer to let the victim know they were there before she used her key to allow the group to enter the trailer. Once they were inside, she indicated that the victim awoke and threw her against a wall. When she was trying to get away from him, he kicked her, threw her aside, and attacked appellant. Karen testified that she left the trailer when the victim and appellant were fighting. She indicated that James and appellant left shortly afterward, and the group drove away.
 {¶ 11} The witnesses basically agree as to the remaining events. After leaving the trailer, the group went to a local Wendy's restaurant and called the police, but they left before the police arrived to interview them. The police apprehended the group at the Fairport residence and recovered a bloody flashlight from the trunk of the car.
 {¶ 12} Officers from the Madison Police Department arrived at the trailer and observed that the victim had a large cut on his head. He was taken to a hospital via ambulance. The sticks discovered on the floor of the trailer contained fingerprints, and investigators determined the fingerprints did not belong to appellant.
 {¶ 13} Appellant was indicted by the Lake County Grand Jury on two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and (A)(2), and two counts of aggravated burglary, one each in violation of R.C. 2911.11(A)(1) and (A)(2). Appellant entered a plea of not guilty to these charges, which the trial court accepted.
 {¶ 14} A jury trial commenced on February 10, 2003. At the conclusion of the state's case-in-chief, the parties and the trial court agreed to wait to address appellant's Crim.R. 29 motion for acquittal in order to accommodate the first defense witness, enabling her to testify that day.
 {¶ 15} Following the testimony of the first defense witness, appellant moved for acquittal as to the aggravated burglary counts. The trial court overruled the motion, and it was not renewed after appellant rested his case. Over appellant's objection, the trial court instructed the jury on complicity.
 {¶ 16} The jury found appellant guilty on two counts of felonious assault and one count of aggravated burglary, in violation of R.C.2903.11(A)(1). However, the jury found appellant not guilty of aggravated burglary, in violation of R.C. 2911.11(A)(2). The jury did not indicate whether it found appellant guilty as the principal offender for each of the counts or if they found him guilty on a theory of accomplice liability.
 {¶ 17} The trial court conducted a sentencing hearing immediately following the end of trial.[1] The court sentenced appellant to a three-year prison term on each of the two felonious assault convictions and a four-year prison term on the aggravated burglary convictions. These sentences were to be served concurrently. The trial court memorialized this sentence in a judgment entry, dated February 20, 2003.
 {¶ 18} From this judgment, appellant appeals and raises the following two assignments of error for our consideration:
 {¶ 19} "[1.] The trial court erred in finding appellant guilty, because such a conviction is against the manifest weight of the evidence.
 {¶ 20} "[2.] The trial court erred in denying appellant's motion for acquittal, pursuant to Crim.R. 29 in violation of his due process rights, when the evidence was insufficient to support the charge of the indictment."
 {¶ 21} In appellant's first assignment of error, he argues that his conviction is against the manifest weight of the evidence. As is evident from the body of his argument, he only contends that his conviction for felonious assault, by means of a deadly weapon, in violation of R.C.2903.11(A)(2), is against the manifest weight of the evidence.[2] We disagree.
 {¶ 22} When reviewing a claim that a judgment is against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 23} R.C. 2903.11(A)(2) provides:
 {¶ 24} "(A) No person shall knowingly do any of the following:
 {¶ 25} "* * *
 {¶ 26} "(2) Cause serious physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 27} "`Deadly Weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon." R.C. 2923.11(A). A wooden stick and a large metal flashlight, when used as clubs, can both be deadly weapons. See, e.g., State v. Stanley (Aug. 24, 1989), 3d. Dist. No. 9-87-57, 1989 Ohio App. LEXIS 3343, at 5, (A large metal flashlight can be used a deadly weapon.); State v. Pope (Oct. 4, 1990), 3d. Dist. No. 8-89-19, 1990 Ohio App. LEXIS 4557, at 9, (A toilet plunger handle can be used as a deadly weapon.).
 {¶ 28} We now turn to address the weight of the evidence suggesting that appellant used, or assisted in using, one of these weapons to cause physical harm to the victim. In his initial police statement, the victim stated that appellant hit him with a stick. At trial, he stated that appellant may have hit him with a stick. Patrolman Patrick Radigan testified as a rebuttal witness, indicating that appellant admitted to him during an interview on the night of the incident that he hit the victim with a stick. Further, the stick was found covered with blood in the victim's trailer, and James identified it as a wooden table leg from a stand that he owned and the same stick that appellant took from the Fairport residence. As such, there is some evidence that appellant hit the victim with a stick. Appellant's conviction for felonious assault, by means of a deadly weapon, in violation of R.C. 2903.11(A)(2), is not against the manifest weight of the evidence.
 {¶ 29} We will also analyze whether appellant's conviction of a violation of R.C 2903.11(A)(2), under a complicity theory, is against the manifest weight of the evidence. Although the trial court instructed the jury on complicity, we are unable to ascertain whether the jury found appellant guilty of a violation of R.C. 2903.11(A)(2) because he was the principal offender or he acted as an accomplice. The indictment did not allege that appellant was guilty based on a complicity theory. However, "`[a] charge of complicity may be stated in terms of [R.C. 2923.03(F)], or in terms of the principal offense.'" State v. Herring,94 Ohio St.3d 246, 251, 2002-Ohio-796, quoting R.C. 2923.03(F).
 {¶ 30} Thus, "R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." (Citations omitted.) Id. Our review demonstrates that the trial court did not err by instructing the jury on complicity and that such a conviction is also not against the manifest weight of the evidence.
 {¶ 31} The relevant complicity statute is R.C. 2923.03, which provides:
 {¶ 32} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 33} "* * *
 {¶ 34} "(2) Aid or abet another in committing an offense."
 {¶ 35} "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised or incited the principal in the commission of the crime and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson, 93 Ohio St.3d 240,2001-Ohio-1336, paragraph one of the syllabus.
 {¶ 36} James admitted to hitting the victim with a flashlight. Thus, if the jury determined that appellant assisted, supported, encouraged, or cooperated with James, it could find appellant guilty of a violation of R.C. 2903.11(A)(2).
 {¶ 37} Karen, James, and Kristina each testified that there was no prior discussion or plan to injure the victim. However, because the testimony of the witnesses differed as to who exactly was drinking that evening and who drove the car to the trailer, the jury was required to weigh the credibility of these witnesses to determine how the events occurred. As such, the jury may have had reason to give little credence to the testimony of these witnesses that there was no common plan to injure the victim.
 {¶ 38} Moreover, while all the witnesses directly testified that there was no plan to attack the victim, the actions of the group paint a different picture. The victim was attacked. There was testimony that both James and appellant armed themselves with weapons prior to entering the trailer, that the group predicted a possible physical confrontation, and that the group entered the trailer at 2:30 a.m.
 {¶ 39} Further, there was testimony from James that appellant drove the car on the night in question, both to and from the trailer. Driving a vehicle that transports the principal offender to and from the scene of a crime can be considered aiding and abetting the principal in the commission of the crime, invoking criminal liability on the driver. Statev. Holder, 11th Dist. Nos. 2001-G-2345 and 2001-G-2350, 2002-Ohio-7124, at ¶ 62; State v. Calwise, 7th Dist. No. 00 CA 77, 2003-Ohio-3463, citing State v. Lockett (1976), 49 Ohio St.2d 48. As such, any finding that appellant was guilty of violating R.C. 2903.11(A)(2) on a theory of accomplice liability was not against the manifest weight of the evidence.
 {¶ 40} To summarize, the jury could have found appellant guilty of violating R.C. 2903.11(A)(2) either as the principal offender or as an accomplice. Regardless, the jury's verdict is not against the manifest weight of the evidence. Appellant's first assignment of error is without merit.
 {¶ 41} In appellant's second assignment of error, he argues that the trial court erred by denying his motion for acquittal. Specifically, he contends that sufficient evidence was not presented to sustain a conviction for aggravated burglary. We disagree.
 {¶ 42} In order to preserve a sufficiency of the evidence challenge upon appeal, a defendant must renew his Crim.R. 29 motion at the close of his own case. State v. Brown (1993), 90 Ohio App.3d 674, 685, citingHelmick v. Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71, at paragraph one of the syllabus. When a defendant fails to renew his motion for acquittal at the close of all evidence in a jury trial, he waives any error with regard to the sufficiency of the evidence. Dayton v. Rogers
(1979), 60 Ohio St.2d 162, 163; State v. Hurd, 11th Dist. No. 2001-T-0086, 2002-Ohio-7163, at ¶ 13; State v. Rhodes, 11th Dist. No. 2000-L-089, 2001-Ohio-8693, 2001 Ohio App. LEXIS 5650, at 26; State v.Lindsey (Sept. 23, 1994), 11th Dist. No. 93-P-0050, 1994 Ohio App. LEXIS 4266, at 3-4.
 {¶ 43} Appellant failed to renew his motion for acquittal at the close of the defense's case. It follows that he has waived any error as to the sufficiency of the evidence.
 {¶ 44} The dissent contends that, due to unique circumstances at trial, appellant did not waive the argument by failing to renew his motion after the close of all evidence. According to the dissent, a motion for acquittal was discussed at the end of the state's case-in-chief and after the first defense witness testified, but not after the close of all evidence. The dissent concludes that appellant had not waived any error as to the sufficiency of the evidence.
 {¶ 45} First, we disagree with the dissent's position that the equities of the situation entitled appellant to appellate review of the merits of the issue raised. Equity has little to do with a determination of guilt or innocence in a criminal matter; it has even less to do with determining the parameters of the subsequent appellate process. It is perhaps axiomatic to conclude that a defendant may only appeal from a denial of his motion for acquittal when a court denied that motion after hearing all evidence. It follows that a defendant must renew his motion for acquittal at the close of all evidence in order to preserve this issue for review. See Rogers at 163; Hurd at ¶ 13; Rhodes at 26;Lindsey at 3-4. Appellant did not.
 {¶ 46} Further, appellant has not cited any authority, or otherwise argued that, despite his failure to renew his motion at the close of all evidence, there was no waiver. There is no authority of which we are aware that gives appellant a legal right to have the merits of this waived issue addressed.
 {¶ 47} Despite this apparent barrier, in the appellate process, it is sometimes not what you do, but how you do it. An appellate court canchoose to address the issue in the alternative, to make the point that if any error occurred, it was harmless. As such, the issue can only be addressed as dicta in the alternative. Specifically, we are free to conclude that in the event that our analysis is incorrect as to appellant's waiver, his second assignment of error would still be without merit for other reasons. To wit: sufficient evidence was presented to demonstrate that appellant committed trespass, a lesser included offense of aggravated burglary, and that he committed aggravated burglary.
 {¶ 48} Thus, we also take issue with the position of the dissent as to the merits of appellant's second assignment of error. Specifically, was the evidence sufficient to withstand a valid motion to acquit? The authority cited by the dissent to demonstrate it was not is problematic. The citation of Mariemont v. Wells (1986), 33 Ohio Misc.2d 9, is a municipal court case, not an appellate case. It holds no authority for this court.
 {¶ 49} Further, we do not believe that the cases from the Supreme Court of Ohio cited by the dissent in support of its argument actually do so.
 {¶ 50} For example, "in Ohio, one can commit a trespass and burglary against property * * * if another has control or custody of that property." State v. Lilly, 87 Ohio St.3d 97, 102, 1999-Ohio-251. As indicated in State v. Steffen (1987), 31 Ohio St.3d 111, 115, one with control and custody of a property has the authority to give a third person permission to enter the premises. See, also, State v. Hermann
(Mar. 8, 1996), 11th Dist. Nos. 95-P-0044 and 95-P-0045, 1996 Ohio App. LEXIS 881, at 2-3.
 {¶ 51} At a given time, multiple individuals may have control and custody over a single property, i.e., when a married couple shares a residence. However, a majority of jurisdictions "have found that the entry of an estranged spouse upon the property of the other spouse constitutes an unauthorized entry to support charges of trespass or burglary." (Emphasis added.) (Citations omitted.) Lilly at 103. As such, "marital status no longer bars a conviction for burglary * * *." Statev. Allen (Dec. 3, 1999), 6th Dist. No. L-98-1383, 1999 Ohio App. LEXIS 5763, at 7; Lilly at syllabus.
 {¶ 52} The question of whether one spouse has the sole possessory interest in the home depends on whether the evidence shows that both parties had made the decision to live in separate places. State v. O'Neal
(1995), 103 Ohio App.3d 151. Evidence that the person has moved out indicates that he or she has relinquished custody and control. State v.Hinojosa, 12th Dist. No. CA2003-05-104, 2004-Ohio-1192, at ¶ 15. This is true notwithstanding the fact that some belongings may remain at the former residence. O'Neal; Hinojosa at ¶ 16.
 {¶ 53} Further, the "use of a key is not dispositive." State v.Jones, 7th Dist. No. 00 JE 18, 2002-Ohio-2791, at ¶ 50. It is clear that the burglary and trespassing statutes have been interpreted to protect the dweller, not an estranged spouse who has vacated the premises. Statev. Nelson, 11th Dist. No. 2002-A-0019, 2003-Ohio-5699, at ¶ 22; Lilly at 102.
 {¶ 54} In its analysis, the dissent also concludes that Karen had not relinquished custody or control of the trailer and, thus, had the authority to grant appellant permission to enter. A critical fact, which was not disputed, is that Karen's reason for returning to the trailer was to retrieve belongings which she had left behind when she moved out ofthe trailer the previous week. The evidence was clear that everybody involved was aware of that fact. Everyone was also aware that, although she still had a key and was still married to the victim, she had vacated the residence. It follows that she had relinquished custody and control over the trailer. Lilly at 103; Nelson at ¶ 23; Hinojosa at ¶ 15. Minimally, there was sufficient evidence from which a jury could draw a reasonable inference concerning the foregoing conclusion.
 {¶ 55} Further, there was testimony that appellant accompanied Karen to the trailer, expecting a physical confrontation with the victim. "Civil, peaceful avenues of redress exist to enforce the rights of a person who believes he or she has been wrongfully excluded from certain property. There is no privilege to use force, stealth, or deception to gain possession." Lilly at 102. Public policy commands that, if Karen felt she needed protection, she could not bring in a third party as an "enforcer."
 {¶ 56} Even if the dissent's contention is correct that appellant had valid permission to enter the trailer, any such privilege was terminated upon the commission of a criminal act of violence against the spouse after entry. Once the guest commits a crime such as acting violently against a resident spouse, that spouse can revoke any permission given to the guest by the other spouse. Steffen at 115, (Permission to enter a premises can be revoked upon an act of violence against a person who has the authority to revoke the privilege of initial entry.). Here, the victim actually tried to call 911 when the violence began.
 {¶ 57} Even if the inviting spouse was still in residence and the original entry was not trespass, logic dictates the other resident spouse should not have to endure the presence of a noxious third party in his own dwelling. This fits within a broad public policy argument that violence is less likely to occur if the presence of a contentious third party can be vetoed by either resident spouse. While such a veto may not lead to domestic harmony, it will result in a lesser likelihood of a breach of the peace within the house. A dissenting spouse should not beforced to accept the presence of a person repugnant to himself, in hisown home. The dissenting spouse, as a matter of common sense, needs to be able to revoke any permission given to a third party by the other spouse, in order to allow himself to peacefully reside in his own dwelling. The dissenting spouse's right to be free from the unwanted presence of a repugnant person should supersede the other spouse's right to invite guests.
 {¶ 58} To summarize, sufficient evidence was presented to demonstrate that Karen herself had relinquished her right to be on the premises. The circumstances imply beyond a reasonable doubt that appellant reasonably understood that both he and Karen had no right to be there. Such evidence supported the conclusion that appellant knowingly entered the property without privilege to do so, committing trespass, in violation of R.C2911.21(A)(1).
 {¶ 59} Sufficient evidence was also presented indicating that, even if appellant had valid permission to enter, such permission was implicitly revoked upon his act of violence against the victim. Thus, he remained on the property without privilege to do so.
 {¶ 60} Sufficient evidence was also presented as to the intent element of the burglary statute. The Supreme Court of Ohio held in State v.Fontes, 87 Ohio St.3d 527, 530, 2000-Ohio-472, that "for purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point
during the course of a trespass." (Emphasis added.)
 {¶ 61} In the instant matter, regardless of whether appellant's initial entry was authorized or unauthorized, his privilege to remain on the premises was revoked due to his acts of violence against the victim. The evidence is undisputed that appellant physically attacked the victim in the trailer. As such, sufficient evidence was presented in support of the charge of burglary, in violation of R.C. 2911.11(A)(1).
 {¶ 62} To summarize, appellant waived any issue as to the sufficiency of the evidence presented to support a charge of aggravated burglary. In the alternative, our review indicates that sufficient evidence was presented to support the charge, and any error in the finding of waiver was harmless. The trial court properly denied appellant's motion for acquittal. Appellant's second assignment of error is without merit.
 {¶ 63} Appellant's two assignments of error are without merit. We hereby affirm the judgment of the trial court.
Grendell, J., concurs,
O'Neill, J., dissents with Dissenting Opinion.
[1] A transcript of the sentencing hearing has not been made part of the record on appeal.
[2] Appellant does not argue in his brief that his conviction for felonious assault, in violation of R.C. 2903.11(A)(1), is against the manifest weight of the evidence.