JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Jamar Foster appeals from his convictions for two counts of aggravated robbery, two counts of aggravated burglary, and felonious assault, all with firearm specifications. For the reasons set forth below, we affirm.
 {¶ 2} On April 27, 2004, defendant was indicted pursuant to a six-count indictment. Counts One and Two charged him with aggravated robbery with one-year and three-year firearm specifications. Counts Three and Four charged him with felonious assault with one-year and three-year firearm specifications. Counts Five and Six charged him with aggravated burglary with one-year and three-year firearm specifications.
 {¶ 3} Defendant pled not guilty and the matter proceeded to a jury trial on December 1, 2004. For its case, the state presented the testimony of Charley Bowers, Ronald Jones, and Cleveland Police Det. David Santiago.
 {¶ 4} Charley Bowers testified that in 2003, he sold marijuana from his apartment on Franklin Boulevard in Cleveland. One of the persons to whom Bowers sold marijuana was Ronald Jones, or "Ron Ron." Jones usually bought ten dollar bags and occasionally brought other people with him to Bowers' apartment.
 {¶ 5} On October 15, 2003, someone pressed the buzzer to be let into his apartment. He then saw Jones and another man in the hall and let them into his unit for a marijuana purchase. According to Bowers, the second man had come to the apartment with Jones on a previous occasion to buy marijuana.
 {¶ 6} During the incident at issue, the men wanted to buy a half-pound of marijuana. Bowers quoted them a price of $950. The men thought this was a high price but Bowers would not lower it. They spoke amongst themselves, then the second man said, "Well, fine, we're just going to take it" and pulled out a gun from his coat.
 {¶ 7} According to Bowers, this man made him get down on the floor and held the weapon to his head. The weapon was a semiautomatic, small caliber weapon such as a .25. Jones did not have a gun.
 {¶ 8} Bowers next testified that he reached around to knock the gun down and as he was swinging around, the weapon went off, striking him in the side. The man then gave the gun to Jones and ran through the apartment searching for marijuana. According to Bowers, Jones held the gun on him and told him not to move, then instructed the other man to hurry, warning that the police would soon be there. The men left approximately two or three minutes later and Bowers called 9-1-1.
 {¶ 9} Bowers further testified that the bullet traveled through his spleen, liver, and stomach, and that he was hospitalized for six days in connection with the attack.
 {¶ 10} Bowers met with Det. Santiago at the hospital. He identified Jones and provided a description of the second man. He later viewed a photo array and told police that he knew one of the men but was not sure how he knew him.
 {¶ 11} Upon returning to his home, he observed that his apartment had been ransacked.
 {¶ 12} On cross-examination Bowers admitted that he initially told police that the assailant appeared to be in his mid teens. He also acknowledged that he did not know whether he was shot accidentally or intentionally. He also stated that he was not given the photo array until after Jones' trial had commenced. During this proceeding, Bowers testified that the assailant was a black male, and did not provide other details concerning his appearance. He also testified that the men did not take anything from the apartment.
 {¶ 13} Bowers also explained that Jones kept the weapon on him while the other man searched the apartment.
 {¶ 14} On redirect, Bowers noted that he initially told police that the other man was called "Mack."
 {¶ 15} Ronald Jones testified that he is also known as "Ron Ron" and that he is currently imprisoned for felonious assault and aggravated robbery in connection with the shooting of Bowers.[1] He has also been convicted of two drug cases.
 {¶ 16} He further testified that he has known defendant for two or three years and that he is known as "Jay." He also stated that he used to buy marijuana from Bowers.
 {¶ 17} With regard to the incident at issue, Jones testified that he and defendant went to Bowers' home to buy marijuana and defendant inquired about purchasing a "20 sack" or half pound. Bowers indicated that this amount would cost around $900. Defendant asked Bowers to lower the price. Jones' next recollection is of defendant pointing a gun at Bowers' face. Bowers tried to move the gun away. At this time, the gun discharged and Bowers was struck in the stomach.
 {¶ 18} Jones claimed that he was shocked by defendant's actions and that defendant then passed the gun to him and asked me to hold it while he searched Bowers' freezer. The men then left the apartment and, according to Jones, did not see each other after the shooting.
 {¶ 19} Jones admitted that he was tried and convicted for a role in connection with the shooting. During his trial, he provided no information about defendant because he was afraid of "street consequences."
 {¶ 20} Later, when Jones was about to be sentenced, after having fled during the course of his trial, he identified defendant as the shooter.
 {¶ 21} On cross-examination, Jones admitted that he was not present following the second day of his trial but he claimed that he was in the hospital and that his attorney knew where to find him. He was ultimately convicted of aggravated robbery and felonious assault with firearm specifications. He learned that the judge gave long sentences then met with his lawyer and police. His father then provided the police with a picture of defendant. He ultimately received an eight-year sentence, and he acknowledged that it could have been much longer. He is eligible for early release after serving the time required for his gun specification. He stated that he did not think he would be granted early release, however, and he admitted that he has had other convictions for drug trafficking and for violating his probation.
 {¶ 22} With regard to his testimony during his trial, Jones had maintained that he and someone named "Mack" coincidentally arrived at Bowers' home at around the same time and did not conspire to rob him. He also admitted that at the time of the shooting, he was intoxicated on alcohol and marijuana. On redirect, he indicated that the state had promised him nothing in exchange for his testimony.
 {¶ 23} Det. David Santiago testified that he was assigned to investigate the shooting. He met with Bowers in the hospital and learned that he had major surgery for his wounds. At this time, Bowers indicated that his assailants were "Ron Ron" and "Mack" and that "Mack" was 180 or 185 pounds and 5'9". Det. Santiago determined that "Ron Ron" was Ronald Jones and Bowers later identified him from a photo array. Det. Santiago did not learn the name of the second man until after meeting with Jones. Jones identified the other man as "Jay" and provided a photograph of him. He learned defendant's name after meeting with someone from Shaw High School.
 {¶ 24} Det. Santiago denied making any promises to Jones in exchange for his cooperation.
 {¶ 25} On cross-examination, he admitted that he had taken no fingerprints from the crime scene. He also admitted that when people cooperate with the police it is because they hope to receive something in exchange for that cooperation.
 {¶ 26} The matter was submitted to the jury and defendant was convicted of all charges. The trial court sentenced him to a total of seven years, representing four years for the offenses plus three years for the firearm specifications. Defendant now appeals and assigns five errors for our review.
 {¶ 27} Defendant's first assignment of error states:
 {¶ 28} "The state failed to present sufficient evidence to sustain Appellant's convictions."
 {¶ 29} Within this assignment of error, defendant asserts that the evidence is insufficient to support his felonious assault conviction because, he claims, the element of "knowingly" was not established. He further claims that the evidence is insufficient to establish his conviction for aggravated burglary as the state did not establish that he trespassed into Bowers' home by force, stealth or deception.
 {¶ 30} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 31} R.C. 2903.11(A)(1) defines felonious assault as:
 {¶ 32} "(A) No person shall knowingly do either of the following:
 {¶ 33} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 34} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 35} The culpable mental state of "knowingly" is set forth in R.C.2901.22(B) as follows:
 {¶ 36} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 37} When the evidence is viewed in a light most favorable to the state, a rational trier of fact could have found that sufficient evidence of felonious assault was presented to warrant presenting this charge to the jury. The state demonstrated that defendant came to the apartment with a weapon, demanded the marijuana, held a gun to Bowers' head, gave the gun to Jones after Bowers was shot, instructed Jones to hold the weapon then ran through the apartment and searched Bowers' freezer. From the totality of the state's evidence, including defendant's demand of marijuana, his threatening behavior and holding of a gun to Bowers, as well as his actions following the shooting, a rational juror could conclude that defendant knowingly committed the offense of felonious assault. Accord State v. Johns, Clermont App. No. CA2003-07-055, 2004-Ohio-3671; State v. Ratliff, Montgomery App. No. 19684, 2003-Ohio-6905.
 {¶ 38} The elements of aggravated burglary are set forth in R.C. 2911.11(A)as follows:
 {¶ 39} "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 40} "* * *
 {¶ 41} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 42} The element of force as used in this statute "means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).
 {¶ 43} Criminal trespass is defined in R.C. 2911.21 and provides in relevant part, "(A) no person, without privilege to do so, shall do any of the following: (1) knowingly enter or remain on the land or premises of another[.]"
 {¶ 44} It is axiomatic that even if appellant had valid permission to enter, such permission was implicitly revoked upon his act of violence against the victim. State v. Murray, Lake App. No. 2003-L-045, 2005-Ohio-1693. Thus, he remained on the property without privilege to do so. Moreover, in State v. Powell (1991), 59 Ohio St.3d 62, 571 N.E.2d 125, paragraph one of the syllabus states that "the crime of aggravated burglary continues so long as the defendant remains in the structure being burglarized. (R.C. 2911.11 and 2911.21, construed.)" In so holding, the court reasoned that "the crime of aggravated burglary continues so long as the defendant remains in the structure being burglarized because the trespass of the defendant has not been completed." Id. at 63, 571 N.E.2d at 127.
 {¶ 45} In the instant matter, regardless of whether defendant's initial entry was authorized or unauthorized, his privilege to remain on the premises was revoked due to his armed attack of violence against Bowers. This evidence, if believed, would be sufficient to prove the use of force and that Thomas trespassed on the premises with the intent to commit a felony. As such, sufficient evidence was presented in support of the charge of aggravated burglary, in violation of R.C. 2911.11. AccordState v. Murray, supra; State v. Thomas (Dec. 20, 1995), Cuyahoga App. No. 68313.
 {¶ 46} This assignment of error is without merit.
 {¶ 47} Defendant's second assignment of error states:
 {¶ 48} "The Appellant's convictions are against the manifest weight of the evidence."
 {¶ 49} In this assignment of error, defendant complains that Jones was not credible in light of various contradictions and omissions in his testimony and in light of the fact that he did not assist the police in finding defendant until after he had been absent from his own trial and was to be sentenced.
 {¶ 50} The term "manifest weight of the evidence" concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue rather than the other. State v.Thompkins, supra, at 387. Weight is not a question of mathematics, but depends on its effect in inducing belief. Id. When a court of appeals reverses a judgment because a verdict was against the manifest weight of the evidence, the appellate court sits as a thirteenth juror and disagrees with the fact-finder's resolution of conflicting testimony. Id. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.
 {¶ 51} In this matter, Bowers testified that Jones and another man came to his apartment and asked about buying marijuana. The other man pulled a gun on him, ordered him to the ground, and he was then shot. Bowers told police that the assailants were "Ron Ron" and another man. Although Bowers could not identify the second man, he described him as 5'9" and 180 lbs. After viewing a photo array, he picked out defendant as someone he recognized "but [was] not sure where from [sic]." After being convicted in absentia, and prior to his sentencing, Jones provided a photo of defendant for police. He testified that he was intoxicated but he stated that defendant, whom he had known for years, was the man who was with him and who held the gun on Bowers which was then discharged. Because Jones was an accomplice, the jury was instructed to view his testimony with "grave suspicion" and "grave caution." (Tr. 532-533).
 {¶ 52} Despite the fact that Bowers testified that the other man was called "Mack," Jones testified that he knew defendant as "Jay," and despite the fact that Jones admitted that he wanted to get out of the trouble that he was in, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice in convicting defendant of the offenses herein.
 {¶ 53} This assignment of error is without merit.
 {¶ 54} Defendant's third assignment of error states:
 {¶ 55} "The trial court erred in allowing the introduction of testimony which revealed Appellant appeared on a "wanted" poster, this error amounted to a violation of Evid.R. 402, 403, and 404(B)."
 {¶ 56} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; see, also, State v. Bey, 85 Ohio St.3d 487, 490, 1999-Ohio-283, 709 N.E.2d 484. Where an error in the admission of evidence is alleged, appellate courts do not interfere unless it is shown that the trial court clearly abused its discretion. State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. Thus, the admission or exclusion of evidence, including the admission of other acts evidence, lies within the trial court's sound discretion.State v. Bey, supra.
 {¶ 57} Evid.R. 404(B) provides that evidence of other acts is not admissible to prove the character of a person in order to show that the accused acted in conformity therewith. Evidence of other bad acts is generally prejudicial and generally is prohibited by Evid.R. 404(B). See, e.g., State v. Curry (1975), 43 Ohio St.2d 66, 68-69, 330 N.E.2d 720.
 {¶ 58} "While `other acts' evidence may not be used to prove criminal propensity, such evidence may be admissible `if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" State v.Lowe, 69 Ohio St.3d 527, 530, 1994-Ohio-345, 634 N.E.2d 616; see, also, Evid.R. 404(B); R.C. 2945.59. Further, under Evid.R. 404(B) and R.C.2945.59, evidence of other acts is admissible if it tends to prove a specific element of the crime charged. State v. Smith (1990),49 Ohio St.3d 137, 139-140, 551 N.E.2d 190.
 {¶ 59} Generally, "an accused cannot be convicted of one crime by proving he committed other crimes or is a bad person." State v. Jamison
(1990), 49 Ohio St.3d 182, 552 N.E.2d 180. Consequently, "evidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity." Id.
 {¶ 60} "The purpose behind this rule is to prevent an accused from being placed in the unenviable position of having to defend him or herself for two distinct offenses at trial: those crimes which the accused is currently on trial for, and additional illegal activity that the accused allegedly committed in the past." State v. Kanetsky (June 11, 1999), Trumbull App. No. 97-T-0162. {¶ 61} Moreover, "a criminal conviction cannot be based, in whole or in part, upon the `bad character of the defendant theory.'" State v. Pollard (April 13, 2001), Ashtabula App. No. 99-A-0072.
 {¶ 62} Due to the "possible prejudicial effect that extrinsic acts evidence may have in the minds of the trier of fact, Evid.R. 404(B) and R.C. 2945.59 must be strictly construed against admissibility." State v.Swick (Dec. 21, 2001), Lake App. No. 97-L-254.
 {¶ 63} In State v. Tucker, Franklin App. No. 00AP-670, 2002-Ohio-3274, the court held that "information regarding defendant's appearances on a wanted poster and on `America's Most Wanted' simply served to unnecessarily emphasize the seriousness of the crimes for which defendant was a fugitive." The court noted, however, that defense counsel did not object to this evidence as part of his trial strategy and that admission of this evidence was harmless error.
 {¶ 64} Likewise, in this matter, defense counsel seemed to suggest that Jones manufactured his claim that defendant was his accomplice after seeing the poster. Accordingly, we conclude that any error arising in connection with this evidence is harmless beyond a reasonable doubt.
 {¶ 65} This assignment of error is without merit.
 {¶ 66} Defendant's fourth assignment of error states:
 {¶ 67} "The prosecutor's misconduct violated Appellant's right to a fair trial guaranteed by the due process provisions of Article I, Section16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."
 {¶ 68} Defendant next complains that the prosecuting attorney committed misconduct by improperly attempting to bolster Jones' credibility and/or mis-characterizing the evidence.
 {¶ 69} Specifically, defendant complains that the prosecuting attorney stated that Jones had no reason to lie, was afraid, asked to be imprisoned separately from defendant, and suggesting that Jones' testimony was consistent with the testimony of Bowers.
 {¶ 70} The test for prosecutorial misconduct is whether the remarks made by the prosecutor were improper, and, if so, whether they prejudicially affected a substantial right of the accused. State White,82 Ohio St.3d 16, 22, 1998-Ohio-363, 693 N.E.2d 772. Prosecutors are entitled to some latitude when regarding what the evidence has shown and the inferences that can be drawn. State v. Ballew (1996),76 Ohio St.3d 244, 255, 667 N.E.2d 369. Furthermore, a prosecutor's closing argument must be reviewed in its entirety. Id. The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-658,780 N.E.2d 186, citation omitted.
 {¶ 71} Finally, we note that it is acceptable for a prosecutor to comment upon the credibility of witnesses based upon their testimony in court. See State v. Mundy (1994), 99 Ohio App.3d 275, 304,650 N.E.2d 502, citing State v. Price (1979), 60 Ohio St.2d 136,398 N.E.2d 772.
 {¶ 72} As to the contention that the prosecuting attorney improperly bolstered Jones' testimony by stating that Jones had no reason to lie, we note that comments which may be reasonably construed to be "prosecutorial vouching" based on personal belief have been condemned. See, e.g., UnitedStates v. Krebs (6th Cir. 1986), 788 F.2d 1166, 1176. In this matter, however, we cannot conclude that prejudicial vouching occurred. The prosecutor made no statement regarding his personal belief in the veracity of the witness. Rather, in response to defense counsel's assertion that Jones had a motive to testify falsely, the prosecutor pointed out that he also had a motive to tell the truth. There is no indication that the prosecutor was putting the full weight of his office behind the credibility of this witness. The prosecutor simply countered defense counsel's claim that Jones was willing to lie at defendant's expense for the possibility of a shorter sentence than he might have otherwise obtained.
 {¶ 73} As to the comment that Jones was afraid and asked to be imprisoned separately from defendant, we note that in State v. Thornton,
Montgomery App. No. 20652, 2005-Ohio-3744, the court rejected a claim that the prosecutor impermissibly vouched for a witness by commenting that he thought it took "guts" for the witness to admit at trial that she lied at the preliminary hearing about who was driving Jones' car when the incident occurred. The court stated:
 {¶ 74} "We do not agree with Thornton that this is vouching. The prosecutor was merely commenting on the credibility of one of the State's witnesses and the evidence presented in her testimony."
 {¶ 75} Id.
 {¶ 76} Likewise, in this matter, we do not agree that the comment constitutes improper vouching.
 {¶ 77} As to the claim that the prosecutor mis-characterized the evidence by claiming that Jones' testimony was consistent with the testimony of Bowers, we conclude that this is a fair comment upon the fact that both men testified that the assailant asked about purchasing marijuana, wanted a reduced price, produced a gun and ordered Bowers to the floor, held a gun to Bowers' head, that Bowers was then shot, and the assailant gave the gun to Jones and searched the apartment.
 {¶ 78} In accordance with all of the foregoing, this assignment of error is without merit.
 {¶ 79} Defendant's fifth assignment of error states:
 {¶ 80} "The trial court erred by imposing a sentence in violation of the Fifth Amendment Due Process Clause of the United States Constitution and Article I, Section 16 of the Ohio Constitution."
 {¶ 81} Here, defendant complains that the trial court was not permitted, under Blakely v. Washington (2004), 542 U.S. 296,159 L.Ed.2d 403, 124 S.Ct. 2531, to make the findings necessary to support the imposition of a term of imprisonment in excess of the statutory minimum. He further complains that the court's findings were inadequate under R.C. 2929.14.
 {¶ 82} As an initial matter, we note our recent en banc decision inState v. Atkins-Boozer, Cuyahoga App. No. 84151, 2005-Ohio-2666 is dispositive of the first issue raised by defendant. In Atkins-Boozer, we held that the findings required by R.C. 2929.14(B) for the imposition of a sentence in excess of the statutory minimum sentence "does not implicate the Sixth Amendment as construed in Blakely and [U.S. v.]Booker [(2005), ___ U.S. ___, 160 L.Ed.2d 621, 125 S.Ct. 738]. Although the factors enumerated in R.C. 2929.14(B) guide a trial court in determining the appropriate sentence based on the defendant's conduct, they do not permit a trial court to impose any sentence beyond the prescribed statutory range, as contained in R.C. 2929.14(A)."Atkins-Boozer, 2005-Ohio-2666, at P30. Thus, due process did not require jury findings on either of these issues. Accordingly, we overrule this aspect of the assignment of error.
 {¶ 83} As to the remaining argument, we note that pursuant to R.C. 2929.14(B):
 {¶ 84} "* * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 85} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 86} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 87} "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." State v. Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110,715 N.E.2d 131.
 {¶ 88} In this case, defendant had not previously served a prison term; therefore, the trial court was required to impose the shortest prison term unless it made one of the required findings under R.C.2929.14(B). The trial court found that the minimum prison term would demean the seriousness of the offense. (Tr. 630). The trial court therefore made the requisite finding to depart from the minimum sentence.
 {¶ 89} This assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and Corrigan, J., concur.
[1] See State v. Jones, Cuyahoga App. No. 84570, 2005 Ohio 397 (defendant was convicted of one count of aggravated robbery with one and three year firearm specifications, two counts of felonious assault with one and three year firearm specifications, and having a weapon under disability.