OPINION
{¶ 1} Zachery Thornton is appealing his conviction for felonious assault with a deadly weapon.
 {¶ 2} In the early evening of October 3, 2003, Gregory Jones was driving his cousin's car on Gettysburg Avenue in Dayton, Ohio.[1] Mr. Jones' cousin, April Hutcherson and her two minor children were passengers in the vehicle. Hutcherson and the two minor children were sitting in the back seat of the vehicle. The two backseat passenger windows on the vehicle were illegally tinted. The remaining windows on the vehicle were not tinted to the same degree.
 {¶ 3} While driving, Jones encountered Thornton, who was driving another vehicle on Gettysburg Avenue. Jones and Thornton had previously engaged in several altercations. While the cars were swerving back and forth within their lanes, the two began shouting at each other from their cars, threatening each other with bodily harm. Jones pulled into a gas station at the corner of Third Street and Gettysburg, striking Thornton's vehicle. Thornton pulled into the gas station behind Jones after the collision.
 {¶ 4} At the gas station, Jones got out of his vehicle, approached Thornton's vehicle while continuing to yell at him, and hit the front windshield with the palm of his hand. Thornton got out of his vehicle and removed a tire iron from the trunk of his car. Jones hurried to his car and began to drive away. As Jones was pulling away, Thornton threw a tire iron at Jones' vehicle. The tire iron shattered the right rear passenger side window and hit one of the minor children in the back seat. The child was taken to a hospital where he received thirty stitches and plastic surgery. The child's hearing was somewhat damaged, he required medical treatment and has scarring.
 {¶ 5} On November 18, 2003, Thornton was indicted on one count of felonious assault with a deadly weapon. Thornton entered a plea of not guilty, and the matter proceeded to trial. On February 19, 2004, Thornton was found guilty as charged. He was sentenced to six years of incarceration.
 {¶ 6} Thornton has filed this appeal from his conviction, raising the following assignments of error:
 {¶ 7} "1. The appellant's conviction for felonious assault (deadly weapon) is not supported by sufficient evidence and is against the manifest weight of the evidence.
 {¶ 8} "2. The appellant's conviction must be reversed since he was denied witness statements required under the court management plan.
 {¶ 9} "3. Appellant was denied a fair trial due to prosecutorial misconduct.
 {¶ 10} "4. Appellant's conviction must be reversed due to the court's failure to give jury instructions on recklessness, negligent assault, assault and aggravated assault.
 {¶ 11} "5. The court erred in not granting a continuance to determine if the appellant was voluntarily absent from trial."
Appellant's first assignment of error:
 {¶ 12} Thornton contends that his conviction is against the sufficiency of the evidence and the manifest weight of the evidence. We disagree.
 {¶ 13} In reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state had proven the essential elements of the crime beyond a reasonable doubt. See State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 14} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra at 175.
 {¶ 15} Thornton first argues that the State did not present sufficient evidence, let alone competent and credible evidence, that he acted knowingly in injuring the minor child. Thornton argues that the evidence demonstrated that the rear passenger windows on Jones' car were tinted so dark that no one could see through them. Moreover, he argues that the night of the crime was dark and rainy. However, the state presented evidence that the exchange began around 5:00 p.m. when the cars traveled side by side down Gettysburg Avenue. Jones and Thornton had rolled down their windows and were arguing. The rear windshield of Jones' vehicle along with the front side windows and front windshield were not tinted as dark as the rear passenger windows. Thus, Thornton arguably had an unobstructed view into the vehicle from various sides and could see additional passengers. Jones' cousin testified that when Jones got out of the car, she, a passenger in the rear of the car, screamed at him to get back into the vehicle. Therefore, Thornton was able to hear that passengers were in the rear of the vehicle. The State presented evidence that Thornton could see and hear that several passengers were in Jones' car, including rear passengers.
 {¶ 16} Having reviewed the evidence, we find that a rational juror when looking at this evidence in a light most favorable to the prosecution could have determined that the State had proven the knowingly element of the crime. Additionally, we find that this evidence presented by the State amounted to competent, credible evidence that Thornton knowingly committed the crime.
 {¶ 17} Thornton also argues that the determination that the tire iron was a deadly weapon was against the manifest weight of the evidence and not supported by sufficient evidence. R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." The State argues that it established that the tire iron was a deadly weapon because he used it as a weapon and it was capable of causing death. The State presented the testimony of the child victim, Jones' cousin, and Jones that each of them saw that after Jones struck Thornton's car, Thornton retrieved an object from the rear of his vehicle and threw the object at their car. The object was later determined to be a tire iron. This testimony established that the tire iron was used as a weapon.
 {¶ 18} Moreover, the State demonstrated that the tire iron was capable of inflicting death. The victim and his mother's testimony established that the tire iron caused serious injury. Hutcherson, the victim's mother, testified that after she heard the glass break from the tire iron's impact, she looked back and saw her son's ear "hanging off of his body" and that his shirt had blood all over it. The victim required plastic surgery and received thirty stitches. Moreover, at the time of trial the victim still had scars as well as some hearing loss. It is not difficult to conclude from this evidence that a tire iron, such as the one used in this case, could cause death. Thus, a reasonable juror could conclude the State established the element of a deadly weapon because the evidence demonstrated that Thornton had used the tire iron as a weapon and the tire iron was capable of inflicting death. Further, the evidence of Thornton's use of the tire iron and the injury it was capable of inflicting amounted to competent, credible evidence that his use of the tire iron was the use of a deadly weapon.
 {¶ 19} Thornton's conviction was supported by a sufficiency of the evidence and was not against the manifest weight of the evidence. Thornton's first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
 {¶ 20} Thornton argues that the trial court erred in failing to order the prosecutor to give the defense Hutcherson's original statement and in failing to exclude Detective Elzholz's testimony about Thornton's statement made to him when that statement was never provided to the defense. We disagree as to Hutcherson's statement but agree as to Thornton's purported statement.
 {¶ 21} Crim R. 16(B)(1)(f) requires that the prosecutor disclose to defense upon request all evidence favorable to the defendant and material to either guilt or punishment. Brady v. Maryland (1963), 373 U.S. 83
requires the prosecutor to give the defense all evidence material to guilt, punishment or impeachment. Yet, a prosecutor is not required to have an open file policy, but rather may decide what information is disclosed. Kyles v. Whitley (1995), 514 U.S. 419; State v. Sanders,92 Ohio St.3d 245, 261, 2001-Ohio-189. Further, the State is not obligated to provide a defendant with information that he could obtain on his own. State v. Franklin (May 17, 2002), Montgomery App. No. 19041, 2002-Ohio-2370. However, Montgomery County Local Rule 3.03 provides that the prosecutor must give the defense a standard information packet that contains "all witness statements."
 {¶ 22} Thornton first argues that the State failed to provide his counsel with Hutcherson's statement when she testified that she had given a statement to the police on the night of the accident. Officer Christopher Smith, who investigated the accident, testified at the trial that he interviewed Hutcherson and Jones' cousin at the same time and that both of their statements were the same. When asked why his report only mentioned the name of Jones' cousin, the Officer explained that he had miscommunicated in writing the report. He stated that both of the statements were the same and had both been given at the same time and that he would have noted any discrepancy in their stories. Thornton's counsel had received the officer's report prior to trial but it had neglected to mention that Hutcherson had also made a statement consistent with Jones' cousin. However, Thornton's counsel was free at any time to discuss the report with Officer Smith but chose not to do so. Thus, although the police erred in not documenting Hutcherson's oral statement and in not giving that statement to defense counsel, we cannot say that this was reversible error.
 {¶ 23} Thornton also argues error occurred when the trial court allowed Detective Elzholz to testify regarding a phone conversation he had with someone purporting to be Thornton when the defense had not received a written summary of this statement until the first day of trial. In fact, defense counsel had no knowledge of the incriminating statements until the morning of trial.
 {¶ 24} Crim. R. 16(B)(1)(a)(ii) provides that upon written request the prosecutor must provide to the defense any written summaries of any oral statements made by the defendant to a law enforcement officer. The Ohio Supreme Court has construed this provision to require a prosecutor to record and reduce to a written summary a defendant's oral statements to the police, and to timely provide this material to the defense. State v.Bidinost, 71 Ohio St.3d 449, 1994-Ohio-465. The failure to reduce an oral statement by a defendant to a written summary and provide it to the defense is a discovery violation.
 {¶ 25} In determining how to handle a discovery violation, Crim.R. 16(E)(3) gives the trial court discretion in choosing the appropriate sanction, stating:
 {¶ 26} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule * * * the court may order such a party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 27} A trial court should impose the least severe sanction for a discovery violation that is consistent with the purposes of the rules of discovery. City of Lakewood v. Papadelis (1987), 32 Ohio St.3d 1. The Ohio Supreme Court has dealt with the situation in which the prosecution failed to comply with Crim.R. 16(B)(1)(a)(ii) in State v. Parson (1983),6 Ohio St.3d 442. In Parson, supra at the syllabus, the Court stated:
 {¶ 28} "Where in a criminal trial, the prosecution fails to comply with Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted."
 {¶ 29} When applying Parson to this case, we conclude that the trial court erred in permitting Detective Elzholz to testify regarding the conversation. Although the record does not show that the prosecutor willfully withheld the document from the defense, Thornton was prejudiced by the lack of foreknowledge about the statement. When defense counsel objected at trial to the admission of Elzholz's testimony, the trial court allowed the testimony because defense counsel had a day to review the testimony with his client and the court did not see a basis for a motion to suppress. While we agree that the factual situation between Elzholz and a man purported to be Thornton does not create a basis for a motion to suppress, the testimony by Elzholz may have been excluded by the filing of a motion in limine pursuant to Rule of Evidence 901. This evidentiary rule requires that evidence be authenticated prior to its admission "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901 (A). At trial, Elzholz testified that he received a phone call from a man who identified himself as Thornton and knew details about the incident. Elzholz admitted that he was not familiar with Thornton's voice and thus, did not recognize it. Although Elzholz felt that it was Thornton because the caller was familiar with the specifics of the case, defense counsel pointed out on cross-examination that it could have been Jones who called because he did not like Thornton. Jones also had motivation to incriminate Thornton, and knew the specifics of the case. Elzholz could not properly authenticate the caller, and his testimony indicates that he could not identify the voice. Without being able to identify the caller, Elzholz's testimony lacks a proper foundation and is not admissible. If defense counsel had received the defendant's statement prior to trial, he could have filed a motion in limine and possibly excluded Elzholz's testimony.
 {¶ 30} Further, we note that it is troubling that the State failed to provide two statements to Thornton, statements he should have received as part of discovery. The State failed not only to document that Hutcherson made an oral statement to police on the night of the crime and to give the statement to defense, but also failed to provide the defendant with a statement purportedly made by him to law enforcement of an incriminating nature.
 {¶ 31} As Elzholz's testimony contained an admission by Thornton that he had thrown the tire iron at the Jones' vehicle, we find that it was prejudicial to Thornton for Elzholz to testify when he did not receive the document sufficiently in advance to file a motion in limine. The trial court erred in admitting this testimony of Detective Elzholz.
 {¶ 32} We cannot say that the trial court committed reversible error by permitting the state to use Hutcherson's original oral statement. However, the court did commit reversible error in admitting the testimony of Detective Elzholz since the defense was prejudiced by receiving the information the morning of trial and the statement lacked proper authentication. Thornton's second assignment of error as it applies to Elzholz's testimony has merit and is sustained.
Appellant's third assignment of error:
 {¶ 33} Thornton argues that he was denied a fair trial due to prosecutorial misconduct not only in the withholding of witness statements from defense but also in the closing arguments. We disagree.
 {¶ 34} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187, citing State v. Smith (1984),14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v.Phillips (1982), 455 U.S. 209, 219.
 {¶ 35} Because we determined in the second assignment of error that it was reversible error for the trial court to permit Detective Elzholz to testify, we decline to engage in further analysis of the claim of prosecutorial misconduct on this point.
 {¶ 36} "Prosecutors are entitled to some latitude in arguing what the evidence has shown and what the jury may infer from the evidence." Statev. Tibbetts, 92 Ohio St.3d 146, 169, 2001-Ohio-132. Furthermore, "[t]he prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument."State v. Treesh, 90 Ohio St.3d 460, 466, 2001-Ohio-4.
 {¶ 37} Thornton initially argues that the prosecutors at his trial vouched for the veracity of his witnesses. It is acceptable for a prosecutor to comment upon the credibility of witnesses based upon their testimony in court. See State v. Mundy (1994), 99 Ohio App.3d 275, 304, citing State v. Price (1979), 60 Ohio St.2d 136. In the state's closing argument, the prosecutor stated that he thought it took "guts" for Hutcherson to admit at trial that she lied at the preliminary hearing about who was driving Jones' car when the incident occurred. We do not agree with Thornton that this is vouching. The prosecutor was merely commenting on the credibility of one of the State's witnesses and the evidence presented in her testimony.
 {¶ 38} Additionally, Thornton points to another statement by the prosecution that Thornton alleges is an attempt to gloss over the lack of testimony in the record. One of the prosecutors in the rebuttal portion of the closing argument stated that he wasn't going to insult the jury's intelligence by arguing whether "this" is a deadly weapon or a dangerous ordnance. In context, the prosecutor was giving an analogy about someone throwing a knife into a darkened doorway. The prosecutor's comment about whether "this" is a deadly weapon is in reference to the knife in his analogy. As the prosecutor was talking about an analogy, we do not see the misconduct in this statement. We do not agree with Thornton that the prosecutor is glossing over the testimony because the prosecutor is talking about his fictional analogy — not the evidence in this case.
 {¶ 39} Further, Thornton argues the prosecutor engaged in misconduct in the last portion of his rebuttal closing argument. The prosecutor began his rebuttal argument by quoting Plato as stating that the law is essentially "how you believe everyone else should act." The prosecutor then stated "And what a jury necessarily does is decide, does this law apply to these facts? In similar circumstances, is this a crime? So in effect, you rule on this case and you inform us all as to the values of the community." The prosecutor then goes on to explain that the jury's duty is to apply the law to the unique facts of the case. In particular, he states that the judge will give them the law and after that they will decide what the facts are and if the law and facts match up, whether a crime has been committed. We do not agree that the prosecutor in this case was inviting the jury to act exclusively based on community values. Although perhaps not well authenticated, when the closing argument is viewed in its totality, it is apparent that the prosecutor was merely stating that the law represents the established values of the community. The prosecutor repeatedly stated that the judge would give the jury the law and that their job was to determine the facts and then apply the facts to the law. The prosecutor does make some statements indicating that the jury tells the court how Thornton should have behaved and how similarly situated people should behave. Although we think these comments as well as the comments on community values are ill advised, in the context of the entire closing argument we do not find the prosecutor invited the jurors to act based on "community values" or to interpret the law subjectively. The prosecutor repeatedly told the jury that the judge was going to give them the law, that they are obligated to follow the law, and that they must determine whether the law applies to the facts in this case. We believe the comments of the prosecutor were within the wide latitude afforded attorneys during closing arguments.
 {¶ 40} Finally, Thornton argues that the prosecutor improperly gave his views of the law and invited the jurors to individually interpret "knowledge". In the rebuttal portion of his closing argument, the prosecutor repeated the definition of knowledge that the judge was going to give the jury. He then went on to say that the language can be stilted and difficult to understand. He then said how he thought common sense applied this definition in the analogies he had previously given. We do not view this as a situation where the prosecutor gave the jury a different version of the law and asked them to apply his version rather than the court's. The prosecutor only told the jury the law that the judge would later give them and discussed how it would apply in certain situations. While the prosecutor should not have used the words, "let me tell you what I think that means and you decide based on your common sense what you think it means," we think this poor language was merely a transition to providing examples of how the definition applies. We think this is appropriate as the jury must apply the law to the facts of the case.
 {¶ 41} In addition to the comments being proper within the entire scope of the closing argument, the trial court also gave instructions to the jury that cured any improper statements by the prosecutor. The trial court instructed the jury that the evidence in Thornton's case does not include the indictment, opening statements, or the closing arguments. Moreover, the trial court told the jury that they were the sole judges of the facts, the credibility of the witnesses, and the weight of the evidence. We presume that the jury followed the court's instructions.State v. Loza (1994), 71 Ohio St.3d 61, 79.
 {¶ 42} Moreover, the State presented ample evidence of Thornton's guilt, including the statements of three eyewitnesses who saw Thornton throw the tire iron at the car. Thus, even absent the prosecutor's statements, the jury could have found Thornton guilty. Having reviewed the State's closing argument in its entirety, we cannot find that Thornton was prejudiced by the prosecutor's statements and denied a fair trial.
 {¶ 43} Thornton's third assignment of error is without merit and is overruled.
Appellant's fourth assignment of error:
 {¶ 44} Thornton argues that the trial court erred in refusing to give his requested jury instruction on simple assault, negligent assault, reckless assault, aggravated assault, and regarding finding Thornton not guilty if his actions were merely reckless. We agree as to the aggravated assault instruction but disagree as to the remaining requested instructions.
 {¶ 45} "To show reversible error, the proponent of the error must make a two-part showing. First, he must show that the trial court's refusal to give a proposed jury instruction was an abuse of discretion; that is, the refusal was arbitrary, unreasonable, or unconscionable. * * * Second, the proponent must demonstrate that he was prejudiced by the court's refusal to give the proposed instruction. In this connection we note that prejudicial error occurs only if the alleged instructional flaw cripples the entire jury charge. * * *" Jaworowski v. Med. Radiation Consultants
(1991), 71 Ohio App.3d 320, 327-28.
 {¶ 46} A trial court need only give those instructions that are relevant and necessary for the jury to weigh all of the evidence. Statev. Comen (1990), 50 Ohio St.3d 206. A defendant is only entitled to have his proposed jury instructions given when they are correct statements of the law, pertinent to the evidence in the record or to material issues, and are timely presented and not already included in the substance of the jury charge. State v. Guster (1981), 66 Ohio St.2d 266, 269.
 {¶ 47} Thornton sought an instruction stating, "If you find that Mr. Zachary Thornton's actions were reckless, then the State has not met the burden of proof necessary for a charge of felonious assault." A similar instruction was requested in State v. Stewart, Lake App. No. 2000-L-170, 2003-Ohio-62, ¶ 15-16, and the appellate court found that where the jury was adequately instructed that the felonious assault charge required that the defendant acted knowingly, it was proper for the court to refuse to give the instruction. In this case, the trial court also refused to give the instruction, stating that he did not want to give an instruction on another mental state in addition to the knowingly instruction. Rather, the trial court instructed the jury that a "person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result. A person has knowledge of circumstances when he is aware that such circumstances exist." A trial court has the discretion to determine the proper jury instructions. As the trial court gave an adequate instruction that the felonious assault charge required that the defendant committed the crime knowingly and instructed the jury as to the definition of knowingly, we cannot say that the trial court erred in refusing to give the instruction requested by Thornton.
 {¶ 48} Thornton also requested an instruction on simple assault, negligent assault, and reckless assault. In regard to an instruction on a lesser included offense, the court need not give an instruction on the lesser offense unless "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213, 216. Simple assault is a lesser included offense of felonious assault and is defined in R.C. 2903.13 as knowingly causing or attempting to cause physical harm to another. A simple assault instruction was not appropriate in this case because the victim suffered severe physical harm not just physical harm. The victim sustained a severe injury to his ear, including thirty stitches and some hearing damage. Due to the victim sustaining severe physical harm, an instruction on simple assault was not appropriate.
 {¶ 49} Additionally, Thornton requested an instruction on negligent assault and reckless assault. Negligent assault and reckless assault are also lesser included offenses of felonious assault. No evidence at trial characterized Thornton's action of throwing the tire iron at Jones' car as a failure to exercise an ordinary degree of care. Neither did any of the evidence presented at trial indicate that Thornton was merely reckless in throwing the tire iron at the vehicle. On the contrary, the evidence presented at trial indicates that Thornton knew people were in the car, but still threw the tire iron at the car's window. Because Thornton's action was done knowingly rather than merely negligently or recklessly, the trial court was proper in refusing to instruct the jury on negligent assault or reckless assault.
 {¶ 50} Finally, Thornton argues that the trial court should have granted his requested instruction on aggravated assault. Aggravated assault is an offense of inferior degree of felonious assault. If a defendant, who is charged with felonious assault, presents sufficient evidence of serious provocation, the trial court must instruct the jury on aggravated assault. State v. Wong (1994), 95 Ohio App.3d 39. In analyzing whether an aggravated assault instruction is appropriate, the trial court must first determine whether based on an objective standard if the alleged provocation was reasonably sufficient to bring on a sudden fit of rage. State v. Shane (1992), 63 Ohio St.3d 630, 634. An aggravated assault instruction is only appropriate when the victim has caused serious provocation. Id. Serious provocation is provocation that is "sufficient to arouse the passion of an ordinary person beyond the power of his or her control." Id. at 635. Additionally, serious provocation has been described as provocation that is "reasonably sufficient to bring on extreme stress and * * * to incite or to arouse the defendant into using deadly force." State v. Deem (1988), 40 Ohio St.3d 205. Classic examples of serious provocation are assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery. Shane, supra at 635.
 {¶ 51} If the objective standard is met, then the court must continue on to determine under a subjective standard whether this defendant was actually, "under the influence of sudden passion or in a sudden fit of rage." Shane, supra at 634. The emotional and mental state of the defendant and the conditions and circumstances that surround him at the time are only considered during this subjective stage of the analysis. Id.
 {¶ 52} The State asserts that the facts of this case do not meet the objective standard as sufficient provocation to arouse the passion of an ordinary person beyond his control. Jones and Thornton engaged in a heated argument while in their cars. During this argument, the parties were yelling at each other and threatening each other with bodily harm. Then, when turning into the gas station, Jones struck Thornton's car. Additionally, as soon as the parties pulled into the gas station, Jones got out of his vehicle and approached Thornton's car, continuing to yell and threaten him. Clearly Jones was the aggressor. Jones then struck the windshield of Thornton's car while yelling at him. It was at this point that Thornton got out of his car, retrieved the tire iron and threw it at Jones' car. Jones' behavior in yelling at Thornton, threatening him with harm and then striking Jones' car twice, first with his vehicle and then again with his hand, is provocation that could arouse the passion of an ordinary person beyond their control. Thus, we find that Jones' behavior amounted to serious provocation warranting an instruction on aggravated assault. The trial court abused its discretion in failing to give the jury instruction.
 {¶ 53} Moreover, we think that the court's error in refusing to give the jury instruction was prejudicial to Thornton. If the jury had received an instruction on aggravated assault, the jury may have determined that Jones' behavior toward Thornton on the night of the incident was serious provocation that would cause an ordinary person to lose control and did, in fact, cause Thornton to lose control. If the jury would have found Thornton guilty of aggravated assault rather than felonious assault, Thornton would have been subject to a lighter prison sentence. Therefore, the trial court's refusal to give the proposed jury instruction prejudiced Thornton.
 {¶ 54} In refusing to give the jury instruction on aggravated assault, the trial court committed reversible error. Thornton's fourth assignment of error is partially meritorious and is, therefore, sustained as to the requested jury instruction on aggravated assault.
Appellant's fifth assignment of error:
 {¶ 55} Thornton argues that the trial court erred in refusing to grant defense counsel a continuance when Thornton failed to show up for the second day of trial. We disagree.
 {¶ 56} As a trial court has wide discretion in determining whether to grant a continuance, an appellate court can only reverse the denial of a continuance if the trial court abused its discretion. State v. Unger
(1981), 67 Ohio St.2d 65, 67. An abuse of discretion is more than a mere error of law or judgment, but implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 57} This Court previously stated in State v. Carr (1995),104 Ohio App.3d 699, 703, that "[i]f counsel has no explanation for the defendant's absence, the trial court may nevertheless find the absence to be voluntary because the presumption that the defendant knows of his obligation to attend has gone unrebutted."
 {¶ 58} In this case, Thornton was present for the first day of trial but failed to appear for the second day of the proceedings. Thornton's trial counsel was unable to tell the court why Thornton was absent. Defense counsel stated that he had spoken with Thornton at noon and that he had told Thornton to be at the court at 1:20 p.m. However by 2:00 p.m., Thornton had still not arrived nor had he informed the court why he was absent. Without any explanation for his absence, the trial court was within its discretion to presume that Thornton's absence was voluntary and continue with the trial. We do not see this arising to an abuse of discretion. Thornton's fifth assignment of error is without merit and is overruled.
 {¶ 59} The judgment of the trial court is reversed and remanded for a new trial.
Young, J., concurs.
[1] At the time, Mr. Jones' driver's license was suspended. Thus, he was driving illegally that night.